## CHOUTEAU & VALLE vs. SHERMAN.

On the trial of a plea in abatement, to the affidavit in an attachment suit, charging that the defendant had fraudulently conveyed his property, the conveyance of property made by the defendant to pay a debt justly due by him, will not be held fraudulent, although defendant may, about the time of such conveyance, have made false representations as to his condition and intentions, unless the vendees in such deed be parties to the fraud.

## APPEAL from St. Louis Court of Common Pleas.

CROCKETT & BRIGGS, *for Appellants.*

1. The court erred in refusing to instruct the jury that Sherman's false representations to his creditors, on the eve of his failure, were circumstances from which the jury might infer a fraudulent intent, unless rebutted.

2. The instruction given at the instance of defendant was erroneous and calculated to mislead the jury. Brooks vs. Mayberry, 11 Wheat., 78.

3. The verdict was palpably against the evidence, and the court should have granted a new trial for that reason.

### A. TODD, *for Appellee.*

1. The instruction given on behalf of appellee was correct, the only question in issue being whether he had disposed of his property fraudulently, so as to hinder and delay his creditors, and the only transfers shown being the sale of the store and the mortgage to Beach & Eddy.   If these were therefore lawful, his misrepresentations to others about his pecuniary ability, or what he intended to do, no matter how false or wilful, would not affect their legal character.

2. The instruction asked on behalf of the appellants, and refused, was properly refused—First, because the things enumerated in it do not make a prima facie case of fraudulent intent, and so to instruct the jury would be wrong; they are rather matter for argument than of law to the jury. Second, if they did, the instruction is too general for the issue, and is a mere abstract proposition. The issue is made upon the specific charge of having disposed of property fraudulently, as to his creditors, and this the appellants were bound to prove by acts of the kind charged.   Having proved acts of disposition, then, if the principle of the instruction be correct, it should be confined to those acts.

3. The instructions given covered, according to the law of the land, the whole case, as made out by the appellants: only two acts of disposition of the property were proved or pretended, and upon each of these the jury was properly instructed.

4. The motion for a new trial was properly refused: 1st, because the verdict was for the right party; 2nd, because there was evidence on both sides, and, so far as it was conflicting, the jury was the proper judge of both its weight and credibility; 3rd, the courts are and ought to be opposed to the granting of new trials in hard cases, those of flagrant charges, where there has been an acquittal; 4th, the affidavit of newly discovered evidence is insufficient.   It does not show or aver due diligence.   6 Mo. R., 600.   It is founded upon the hearsay of the affiant, and is of only one of the parties.   It is not accompanied by the affidavit of the witness, nor cause shown for the want thereof.   1 Hall R., 382; 6 Mo. R., 600.   The evidence is merely cumulative and immaterial to the issue, or of a kind not likely to produce a different result.   10 Wend. Rep., 285; 5 Serg. & Rawle, p. 41.

5. If the evidence be fully examined, it only shows a case of preference.

### McBRIDE, J., *delivered the opinion of the Court.*

Chouteau & Valle instituted their action of assumpsit, by attachment against Sherman, in the Court of Common Pleas of St. Louis county.— The affidavit charged the defendant with having fraudulently conveyed, assigned, concealed and disposed of his property and effects, so as to hinder, delay and defraud his creditors.   The defendant pleaded in abatement, denying the truth of the affidavit, upon which issue was taken, a trial had, and verdict for the defendant.   The plaintiffs filed a motion for a new trial, which the court refused, and they excepted and appealed to this Court.

*Chouteau & Valle vs. Sherman.*

On the trial, the plaintiffs offered evidence to show that just prior to the commencement of this suit, the defendant sold out his entire stock of dry goods, &c., in St. Louis, to Beach & Eddy, by bill of sale, which recites that the defendant was indebted to them in the sum of near $7000, and that the sale was made to pay them, as far as the goods could, at a price therein agreed. That the defendant also mortgaged to B. & E. a slave and household furniture, to secure the payment of a certain debt therein mentioned. That for several years prior thereto, the defendant had been a large retail merchant in St. Louis, and at the time of the sale aforesaid, was largely indebted to sundry wholesale merchants in St. Louis for goods purchased of them. That defendant had told some of his creditors that he owed but a small amount, and was fully able to pay all his debts, and did not intend to make an assignment. On the next day after the transfer to B. & E., defendant informed his creditors that, until the completion of the inventory, he supposed his stock of goods to be worth $10,000, and that B. & E. had offered him over $8,000 for them. That he had given up all to B. & E. and had nothing remaining for his other creditors. Shortly afterwards, defendant removed to Louisville, Ky., and thence to Cincinnati, Ohio. After his removal to the latter place, some of his creditors called to see him, when he informed them that B. & E. were to have set him up again in business, but afterwards refused and advised him to leave St. Louis, because of the excitement against him; that they would furnish him $1000 to go away with; this he at first declined, but afterwards offered to take it, when they proffered to let him have $500, and after that, $300, which latter sum he took, and removed with his family. That defendant's wife said in his presence that Beach induced her to assent to the mortgage of the slave, by telling her that if she did not, the other creditors would sell the slave, but that he would keep the slave for her use, &c.

The defendant introduced evindence tending to prove that he owed B. & E., at the time of the sale of the goods, near $7,000, for goods and groceries purchased of them, and that the sale was for the purpose of paying said debt. That the goods were correctly invoiced, and amounted to only about $4,000. The inventory was made by day, and, as is usual with retail stores, with the doors open and its trade going on. No one attended on behalf of B. & E. to the invoicing, but, when completed, the store was delivered over to them, who afterwards carried it on until closed by the process of attachment. That defendant commenced business in St. Louis without much means, and was assisted by Beach, to whom he felt under great obligations. That he was an active man in

business—sold a great many goods, but a bad manager, and kept no regular books; his purchases from B. & E. were almost daily, and so of his payments. That the money which he got of B. & E. to enable him to leave St. Louis was intended as a loan, and that defendant and his nephew executed their note therefor.

Other evidence, on both sides, tending to establish the same facts, was also given to the jury.

On the motion of the defendant, the court gave to the jury the following instruction:

That if Sherman was justly indebted to Beach & Eddy, at the time of his conveyance to them, to an amount equal to the value of the property conveyed to them, that such conveyance is valid in law, if made for the payment of said debt, notwithstanding that Sherman may have made wilfully false representations to other creditors as to the amount of his indebtedness, &c., about the date of said conveyance.

To the giving of which the plaintiff excepted, and asked the court to give to the jury the following instructions:

1. That if the mortgage to Beach & Eddy was made upon the understanding, either express or implied, between B. & E. and defendant, that B. & E. should hold the conveyed property, not in fact as security for the payment of their debt, but secretly for the use of Sherman or his wife, and for the purpose of protecting the same against the creditors of Sherman, then the said conveyance is fraudulent as against other creditors, and the jury should find for the plaintiff.

2. That if Sherman, a short time before his failure, made false and fraudulent representations to his creditors as to his pecuniary condition, and continued to make such false and fraudulent representations up to the time of his failure, and if the conveyance to B. & E. was made with circumstances of secrecy and concealment, these are circumstances from which the jury may infer a fraudulent intent on the part of Sherman, unless rebutted by other evidence.

The court gave the first, but refused to give the second instruction—to which refusal the plaintiff excepted. . It is conceded in argument, that the instruction given by the court at the instance of the defendant is right in the abstract, but as the principle therein asserted is not applicable to the facts of this case, the giving of it was calculated to mislead the jury, and therefore the court erred.

If the instruction be a mere abstraction, as contended for, then, according to the repeated decisions of this Court, the giving or withholding of it is not ground of reversal. But we differ in opinion with the

plaintiffs' counsel on the subject, and believe that the instruction not only embodies a sound legal principle, but is also pertinent to both the issue and the facts in the case. So far as the rights of Beach & Eddy are concerned, it is wholly unimportant to enquire whether Sherman intended to commit a fraud upon his other creditors, unless a knowledge of his fraudulent intention can be brought home to B. & E. If Sherman was indebted to B. & E., and they acted in good faith in receiving the goods, &c., in discharge of their debt, they had a legal right to do so, as the law gives the debtor the right of preferring one creditor over another.

It is not like a case where a contest arises about the title to a chattel, and where the admissions of the vendor concerning his title, made prior to the sale, would be legal evidence against the vendee; for, as the vendee takes under the vendor, he would be bound by the declarations of the vendor as to his own title, for the law presumes that he would make no admissions adverse to his own interest.

If the instruction given be correct, as we hold it is, then the one refused was rightfully refused.

There was another ground presented for a new trial, which we will notice. Accompanying the motion for a new trial, is an affidavit of the plaintiff stating that since the trial he has discovered, for the first time, important and material evidence, necessary to a fair decision of the cause on its merits. The affiant states that he has derived his information on this subject from his attorney, who conversed with the witness, &c.— Giving to the statement full credence, and it does not make out a case for a new trial. Evidence to the same point had been given on the trial, and it is not probable that the newly discovered evidence would have changed the verdict, besides, a party applying for a new trial for such cause should show that he had used due diligence in endeavoring to obtain the evidence for the first trial. If his counsel was in possession of a knowledge of the facts which the witness would prove, prior to the trial, he should have communicated them to the plaintiff. Why was the affidavit of the attorney not procured? He was present in court and could have testified more fully as to the conversation between himself and the witness, and have stated whether the conversation took place before or after the trial. A loose practice in granting new trials would lead to consequences subversive of the ends of justice.

The judgment of the Circuit Court ought to be affirmed, and Judge NAPTON concurring, the same is affirmed.

Scott, *Judge.*

Under the statutes of 13th and 27th Elizabeth, the question of fraud is one for the jury, to be determined under the circumstances of the case. That certain facts are strong evidence of fraud and must not be disregarded by juries, is clear, but whether a conveyance is fraudulent must be submitted to them.