## GLANTON VS. ANTHONY ET AL.

Where a purchaser of a portion of the lands, donated, by the United States to this State, for purposes of internal improvement, situate in Jackson county, and for which he had executed his notes as prescribed by law, but received no certificate of purchase, conveyed by deed "all his right, title, or claim of, in, and to any improvement or improvements on public land, that are situate in Jackson county," parol testimony, or the facts and circumstances under which the deed was executed are admissible to explain the meaning and intent of the conveyance, and to show that the deed was for the conveyance of the grantor's interest in the land so purchased of the State.

When parties have deliberately put their agreement in writing, in such terms as import a legal obligation, without any ambiguity as to the object or extent of the agreement, all oral testimony of conversations or declarations, before or at the time of the execution of the contract, or afterwards, should be rejected.

But parol evidence may be introduced, the more perfectly to understand the intent and meaning of the parties; and, whatever indicates the nature of the subject, is a just medium of interpretation of the language and meaning of the parties, and is also a just foundation for giving the instrument an interpretation, when considered relatively, different from that which it would receive, if considered in the abstract.

No distinction can exist between an interest in an improvement on public land, and an interest in the land itself; and so, by a deed conveying all the grantor's interest in such improvement, all his interest in the land, which can be only equitable or possessory, passes by the deed to the grantee.

*Appeal from the Circuit Court of Jackson County in Chancery.*

Hon. BEAUFORT H. NEELY, Circuit Judge.

BEVENS, for the appellant. The subject of the conveyance in the deed of John J. to Benjamin F. Glanton, admits of no doubt or ambiguity. *Pelham ad. vs. Wilson et al.*, 4 *Ark. Rep.* 292.

The court will effectuate the intention of the parties, if it can

be done consistently with the rules of law.  1 *Mass. Rep.* 219 ; 10 *J. R.* 133; *Ch. on Bills*, 6th *Ed.* 92.  But parol evidence is not admissible to explain an ambiguity on the face of the instrument; and no construction can be put upon a contract directly contradicting its express stipulations.  There is no ambiguity in the terms, "an improvement on public land."  *Cobbs vs. Fontaine*, 3 *Rand. Rep.* 487.

Parol evidence is never admissible to explain an ambiguity, which is not raised by extrinsic facts, (*Starkie's Ev.*, 3 vol. 1000; *Phill. on Ev.*, 4 *Ed.* 566, *ib.* 6 *Ed.* 563; nor be admitted to show that the parties intended to use a word, or term, in any other or different sense than the well known meaning of the expression. *Doe on Dem. of Spicer vs. Lea*, 11 *East. Rep.* 312.  *Ib.* 142.

Where there is no latent ambiguity, and the terms of the instrument are clear, even prior letters of the parties are inadmissible to restrain or alter the sense of the instrument.  *Tucker vs. Maxwell*, 11 *Mass. Rep.* 143; *Johnson vs. Johnson*, 11 *Mass. Rep.* 359, 363; *Johnson vs. Weed*, 9 *J. R.* 310; *Putnam vs. Lewis*, 8 *J. R.* 304; *Ch. on Con.*, 3 *Amer. Ed.*, *marg. p.* 25.

Where a contract is once reduced to writing by the parties, all oral testimony of a previous colloquium, or of conversations, or declarations, at the time when it was completed or afterwards, is rejected, as it would tend, in many instances, to substitute a new and different contract for the one really agreed upon, possibly to the prejudice of one of the parties.  *Jordan vs. Fenno*, 13 *Ark. Rep.* 598; 1 *Greenl. Ev.* 298; 3 *Cowen & Hill's notes to Phill. Ev.*, note 961, 984; *Jackson vs Jackson*, 5 *Cowen* 173; 12 *Wend.* 61; 4 *Ark.* 179; 13 *Ark. Rep.* 449.

It being apparent then that the deed conveyed only the interest of the grantor in an improvement on the public land, no oral testimony can be admitted to prove that the grantor intended to convey any legal or equitable interest in the land, as charged in the bill.

JORDAN, for the appellee.   Upon a fair construction of the deed

from John J. to Ben. Glanton,. aided by parol evidence of ex-
traneous circumstances, it is evident that the former conveyed
to the latter his entire interest in the land in controversy.    In
arriving at the true construction of a deed, the court will look to
the entire deed in all its parts.    *Chit. Con.* (*5th Amer. Ed.*) 73, 83;
*Bridge vs. Wellington*, 1 *Mass.* 219.

The situation and true intent of all parties and the subject mat-
ter, are to be considered in  determining  the meaning of a con-
tract.    *Sumner vs. Williams*, 8 *Mass.* 216; *Fowle vs. Bigelow*, 10
*ib.* 382 ; *Wilson vs. Troupe*, 2 *Cow.* 228 ; *Davis vs. Barney*, 2
*Gill & John.* 382; *Lawrence vs. Dale*, 11 *Verm.* 549.

The rule that excludes parol evidence, to contradict or vary
the terms of the written instrument, only excludes evidence of
the language of the party, and not of the circumstances in which
he was placed, or of collateral facts.    1 *Greenl. Ev.*, sec. 297, 286;
2 *Phill. Ev.* 712 (615.)

The question, as to the admissibility of parol evidence, depends
upon whether there is a latent or patent ambiguity on the face
of the deed.    That there is no such patent ambiguity on the face
of the deed, as to render it inoperative and void for uncertainty.
1 *Greenl. Ev.*, sec. 297, 298, 286, 287 *and notes; Gresley's Ev.* 201,
203, 209.    But, on the contrary, it falls clearly within the rule
of latent ambiguities, and that parol evidence may be resorted
to, to annex a definite meaning to the written expressions,. and
to point out their application to the proper subject matter.    2
*Stark. Ev.* (*7th Amer. Ed.*) 757; 1 *Greenl. Ev.* 282; *Selden vs.
Williams*, 9  *Watts* 9; *Hayden vs. Ewing's Devisees*, 1 *B. Mon.*
113; *Franklin Ins. Co. vs. Drake*, 2 *ib.* 52; 4 *Dana* 337; 2 *Leigh
Rep.* 630; 3 *Har. & John.* 469; 2 *Binn.* 109; 19 *J. R.* 313.

An ambiguity, raised by extrinsic evidence, or where it par-
takes of the nature of both a patent and latent ambiguity, may
be removed by parol evidence.    2 *Phill. Ev.* (*5th  Amer. Ed.*)
712 (664) ; 5 *Pick.* 170 ; 1 *Mason C. C. R.* 9 ; 2 *Leigh.* 630 ; 7
*Dana* 276.

Parol declarations of the grantor, previous to the execution of
69BB

the deed, and at the very moment of its execution, are admissible to explain the intention with which it was done.    2 *Steven's Nisi Prius* 1539; 3 *Humph.* 107; 5 *Rand.* 211; 13 *Ark.* 116.

Mr. Justice WALKER delivered the opinion of the Court.

This is a suit in Chancery, from the Jackson Circuit Court. The grounds for equitable relief, are based upon the following state of facts: John J. Glanton, a resident of Jackson county, on the 27th day of January, 1843, applied for and purchased of the Governor of this State, then land agent for the State, the east half of section twenty nine, in township nine north, of range three west, containing three hundred and twenty acres, it being part of the 500,000 acre donation of lands to the State for purposes of internal improvement; for the payment of which, he executed to the State, ten bonds, for the sum of sixty-four dollars each, payable annually, so that the whole payment would be made at the end of ten years.    That no certificate of purchase was delivered to the said John J. Glanton, by said land agent; and that, subsequently, the said John J. Glanton, who had improved said lands, on the 16th day of July, 1845, by deed, conveyed all his right, title, interest and claim, in and to said land, for a valuable consideration, to Benjamin F. Glanton, who, on the 13th of October, 1846, by deed, conveyed all his right, title, interest and claim, in and to the aforesaid tract of land, to John Fisher, for a valuable consideration.    That John Fisher, on the 9th day of August, 1847, by his written endorsement, on the deed from Glanton to him, for a valuable consideration, transferred all his right, title, interest and claim, to said land, to complainant and James Strong, whereby complainant and Strong became the joint owners of the land.    That, subsequently, upon a division of lands, between Strong and complainant, this tract was allotted to complainant as his separate property.

That John J. Glanton, soon after his transfer of the land to Benjamin F. Glanton, removed to Texas, and, sometime thereafter, died; that, after the purchase made by complainant of Fisher

he entered upon the land, and made valuable improvements, un·der the assurance, and belief from the representations of Fisher, that a regular transfer of the certificate of purchase from the State had been made. That, afterwards, on the —— day of December, 1851, the said Benjamin F. Glanton obtained letters of administration on the estate of John J. Glanton, and made application to the land agent for a certificate of purchase, in the name of John J. Glanton, which was issued and delivered to the said Benjamin F. Glanton, who, well knowing all the facts, fraudulently claims the land under said certificate, and is endeavoring to dispose of the same to innocent purchasers. The whole of the purchase money is still due to the State; all of which, he is willing, and tenders, and offers to pay. That he bought the land in good faith, believing that, when such payment was made, the title would pass directly to him; and, in faith of such being the case, became and is an actual resident upon the lands, and has made thereon lasting and valuable improvements.

There would seem to be but little doubt of the existence of the several purchases and transfers, as alleged by complainant: but the point of contest is, as to what estate passed by the deed from John J. Glanton to Benjamin F. Glanton. The complainants contend that they purchased the improvements upon the land, and also the equitable interest of John J. Glanton, in the land; that such was the agreement and understanding of the parties at the time that Benjamin F. Glanton purchased, and also at the subsequent purchases and transfers, and that the language used in the deed of conveyance, from John J. to Benjamin F. Glanton, is, by its legal import, aided by parol evidence of latent ambiguities, sufficient to convey the entire interest of John J. Glanton in the land and improvements thereon.

On the other hand, the defendants insist, that there is no latent ambiguity in the deed; that it clearly imports a conveyance of an improvement upon the land, not the land itself, and that parol evidence is inadmissible to explain, vary, or enlarge, the written contract.

The whole question, therefore, turns upon the legal effect of the deed. The clause expressive of the interest or estate conveyed, is in the following words: "Also, all my right, title or claim of, in and to any improvement or improvements on public land, that are situate in Jackson county aforesaid." This language is very indefinite, both with regard to the identity and extent of the improvements and of the nature and extent of the interest itself. If, however, the grantor had improvements on public lands in Jackson county, then they were conveyed, but there is nothing in the deed by which they could be identified or distinguished, and the grant is void for uncertainty, unless parol evidence is admissible for that purpose. And so with regard to the interest conveyed—it is all the grantor's interest; but what that interest is, is not defined. Whatever interest the grantor had, was doubtless intended to be conveyed, and, unless parol evidence is admissible to show what that is, it would be taken in its popular sense, a possessory right, subject to the right of the United States, the owner of public lands.

The complainant insists that he has a right to show, by parol, what this interest was; that, although the legal title to the land was in the State, still, by virtue of the contract entered into by John J. Glanton, with the land agent, he had at the time an equity which attached to the land, and which was conveyed under the general terms, right, title, or claim, to any improvement, &c.

Whether this position is correct or not, must depend upon the fact as to whether the language used by the contracting parties in the deed, when considered in connection with the circumstances connected with making the contract, may be construed to embrace as well the equitable interest acquired by John J. Glanton, by virtue of his purchase from the State land agent, as the work and labor bestowed upon the land in improving it. If so, then it may be introduced.

The rule is, that when the parties have deliberately put their agreement in writing, in such terms as import a legal obligation, without any ambiguity as to the object or extent of the agree-

ment, all oral testimony of conversations or declarations, before or at the time when it was reduced to writing, or afterwards, should be rejected: for, as the parties have constituted the writing to be the only outward and visible expression of their meaning, no other words are to be added to it, nor substituted in its stead. *Jordan ad. vs. Fenno*, 13 *Ark.* 598; *Hooper vs. Chism*, 13 *Ark.* 449.

But, parol evidence may be introduced the more perfectly to understand the intent and meaning of the parties, and whatever indicates the nature of the subject, is a just medium of interpretation of the language and meaning of the parties in relation to it, and is also a just foundation for giving the instrument an interpretation, when considered relatively, different from that which it would receive, if considered in the abstract.

Mr. GREENLEAF, in his work on *Evidence*, (*Vol.* 1, *page* 386,) after a full investigation of this subject, remarks, "That, in all cases, in which parol evidence has been admitted in exposition of that which has been written, the principle of admission is, that the court may be placed, in regard to the surrounding circumstances, as nearly as possible in the situation of the party whose written language is to be interpreted—the question being, what did the person, thus circumstanced, mean by the language he has employed?"

The extent and application of this rule, will be more fully understood by reference to a few of the adjudicated cases under it.

In the case of *Eli vs. Adams*, 19 *Johnson's Rep.* 317, Adams, an officer, had a writ of capias against one White, at the suit of Eli, who gave to Adams written instructions to show White as much indulgence as he could, with safety to himself and without hazarding the debt. Upon a suit against the officer, for an escape, the escape was not disputed; and the only question was, whether parol evidence was admissible to explain the circumstances, under which the writing was given by Eli to the officer, in order to show the extent of the indulgence meant by the terms, "*as much indulgence as he could*," and it was held that such parol evidence

was admissible.   Judge Spencer said, "these facts do not contradict the writing, but are essential to its right import and meaning."

In the case of *Hayden vs. Ewing*, 1 *B. Mon.* 112, George Ewing devised the children of *Si*, and his wife *Judah*, to his daughter, Catharine Hayden.   It was admitted that the terms of the will, unaffected by extraneous facts, would embrace all the children of Si and Judah, but contended that parol evidence was admissible to show that one of the children was not intended to be conveyed. In this case, the court said, " At most, the facts relied on by Hayden, only make out a case of latent ambiguity, arising upon the application of the devise to the subject described in it, and, as such, it may be solved, not only by the facts, both in and out of the will, but also by parol evidence of intention, for it is a question, not of power, but of intent."

In the case of *Freeland vs. Burt*, 1 *Term. Rep.* 701, where certain premises were leased, including a yard, by metes and bounds, and the question was, whether a cellar, under the yard, was or was not included in the lease, verbal evidence was held admissible to show, that, at the time of the lease, the cellar was in the occupancy of another tenant, and therefore that it could not have been intended by the parties that it should pass by the lease.

And so, also, where a house, or a mill, or a factory is conveyed *eo nomine*, and the question is, as to what was part and parcel thereof, and so passed by the deed, parol evidence is admissible. *Roops vs. Barker*, 4 *Pick.* 239

These decisions will suffice to show the application of the rule, and, in accordance with which, we will hold parol evidence in this case admissible, not to add to, or vary, the terms of the contract, but to show what the parties intended to convey by the use of terms, which, in the absence of such evidence, are susceptible of a different meaning from that intended by the parties contracting.

Turning to the evidence—The witness Miller states that the understanding, at the time the contract was made, was that John

J. Glanton conveyed all his improvement and claim or interest in 320 acres of land, entered under the *two dollar act*, and also all his interest or claim to an improvement called the Cook place, both of which lay in Taylor's Bay, in Jackson county. These two were all the claims owned by Glanton, within the knowledge of witness: the former of which was known as the John Glanton place.

Witness Roddy states, that he was called upon, by John Glanton, to draw the deed, and did so; that John Glanton told him that he had sold his negroes, stock, and all the land he owned, in Jackson county, to his brother Ben. Glanton, and he wanted him to draw up the deed; that he had not the numbers of the land, but that he owned no other land in the county, and that the conveyance could be made sufficiently certain without the numbers. Witness read the deed in the presence of both parties. No objection was made to it. He is positive that it was the understanding of both parties, and they so agreed, that the instrument conveyed all the right, title, and interest, in the land, on which John then lived, to Ben., and without any reservation of title in John. That the land lies in Taylor's Bay, in Jackson county, and is known as the John J. Glanton place. The land lies in township 9 north, of range 3 west—is not certain as to the numbers of the section, but believes it to be the east-half of section twenty-nine, containing three hundred and twenty acres. This was the only improvement owned by John J. Glanton, on public lands in said county, except one known as the Cook place. John Glanton died intestate without issue, leaving a mother, Margaret Roddy, and his brother, Ben. Glanton.

Witness Spradlin was present when Ben. Glanton sold the John Glanton place to Fisher, heard him tell Fisher that he had bought the place of his brother, John J. Glanton; that he, Fisher, was to pay the State of Arkansas for the land, or to clear it out of the office at Little Rock; that he believed that a certificate had issued from the State to his brother for the land, but that it had been lost or mislaid, and his brother John had neglected to

assign it over to him; but he would guaranty such certificate, and that it would be an easy matter for him, Fisher, to get one from the office himself. Ben. Glanton told witness that was the land he had bought from John J. Glanton.

There is other evidence to the same effect; but, if admissible, this is most amply sufficient, in connection with the exhibit showing that John J. Glanton had, before the conveyance to Ben. executed his notes to the State in payment for this land, under a contract to purchase, which, even in the absence of a certificate of purchase, gave him an equitable title to the land.

Leaving out of question all that the witnesses say, about the agreement or understanding of the parties either before, at, or after, the deed was executed, and holding the deed itself to be the sole repository of the contract, the facts and circumstances under which the deed was executed, and which may well be received in evidence, are, that John J. Glanton owned an improvement on public land, which had been donated, by the United States, to the State of Arkansas, for purposes of internal improvement; to which, as an applicant under an act of the State Legislature, he had acquired an equitable interest, which would, upon the payment of the purchase money, entitle him to a perfect legal title, all of which was well known to both parties at the time they were contracting, and at the time the deed was executed; and that the reason why a fuller and more perfect description of the property conveyed, was not inserted, was because the parties had not access, at the time, to the numbers of the land.

Taking these facts, then, in connection with the terms expressed in the deed, can there be a doubt but that John J. Glanton intended to sell his entire interest in the land, such as it was, or that Ben. Glanton intended to purchase less than such entire interest?

The distinction, between an interest in an improvement on public land, and an interest in the land, attempted to be set up by Ben. Glanton, cannot exist: because, the owner of an improvement on public land, of necessity, has some interest in the land,

on which the improvement is situated—not a legal title, nor in most cases, an equitable title, such as may be perfected into a legal title, but still a possessory title, which, under the laws of this State, is recognized and transmissible by descent or deed, and it is also recognized by the laws of Congress, so far as to make the improvement the basis of a preference claim to the land itself. All this title was vested in John J. Glanton, at the time of his transfer to Ben. Glanton, and was known to him. Suppose we attempt to separate the claim and interest in the improvement from that to the land, on which it is made. How can it be done? The possessory right to the land itself is inseparably connected with the improvement; so that, the sale of the one necessarily includes the other. And when Ben. Glanton insists that he bought no interest, except the naked improvement, disconnected from all interest in the land, he made the whole transaction a stupid farce. Would any man buy what he could not hold an hour? Did he intend to leave an outstanding interest in John J. Glanton, which would, at his pleasure, cut him off from the benefit of his purchase? Surely no one can believe it. Nor is such the meaning of the parties, as gathered from the whole transaction. John J. Glanton, in express terms, sold and conveyed *"all his right, title, and claim,"* to the improvement. It is shown by parol evidence what that interest was. The interest acquired from the State then attached, and, being a right and claim, it passed; because he conveyed all his right, claim or interest. He not only, in express terms, conveyed all his right, &c., but he conveyed it forever: and covenanted that he had a good right to sell the same; and that it was free from all incumbrance; and, in order to free it from incumbrance, the claim acquired from the State must necessarily pass; or otherwise, there was an incumbrance at the time known to both parties.

The common sense of this transaction is, that the whole interest of John J. Glanton was intended to pass, and did pass by the deed to Ben. Glanton.

The answer of Ben. Glanton is a great sham. No one of com-

70EB

mon sense would have made such a contract, as he says he made. His answer is flatly contradicted by some three or four witnesses, and is wholly irreconcilable with his transfer to Fisher. He does not pretend that he had any other title than that acquired by his deed from John J. Glanton, and yet he conveys to Fisher the very title which, he says, he never contracted for, and never got of John J. Glanton. The question of fact, resolves itself into this: if he had such title as he conveyed to Fisher, he got it from John J. Glanton, and his answer was false; or, if he did not get such title from John J. Glanton, then, he perpetrated a fraud upon Fisher, by selling an estate which he did not possess.

The answer is, in fact, neither more nor less than an attempt to defeat a title that passed through him to the complainants, by setting up the deficiency of his own title, in his individual right; and asserting title in himself, as administrator of the estate of his brother. He does not claim as heir to his brother, or if he did, it is evident that he could not set it up against the title of the complainants, who hold under his grantee. But the truth is, that if any interest or estate remained in John J. Glanton, after his conveyance to Ben., it passed, at John's death, to his mother, Mrs. Roddy, who has entered her disclaimer in favor of complainants, leaving the sole ground of defence to rest upon his rights as administrator. It is not shown that the estate is in debt, or, if so, that there is not ample personal estate out of which to pay such debts; so that, in any event, Mrs. Roddy, who sets up no claim, is the only real defendant in interest.

So far as the real equity of the case is concerned, it is rarely that a stronger case is made out than the present, or that slighter grounds of defence exist. Indeed, the only question that could seriously arise, grows out of the admissibility of parol evidence, which has already been discussed.

The objection, to the sufficiency of the allegations in the bill, to let in such proof, is not tenable. This is not a case of accident, mistake, or fraud, where the facts and circumstances are to be set out, in order that it may be seen whether in fact, if proven,

they amount to such as entitle the party to relief. The equity in this case, rests upon the contract in terms, and the parol evidence is introduced, not to prove another or a different contract, but to show what the contract really was.

In view of the whole case, we think the decree well sustained by the proof and the equity of the case. Let the decree be affirmed.