McTyer v. McDowell.

McTYER *vs.* McDOWELL.

[REAL ACTION IN NATURE OF EJECTMENT.]

1. *Powers of commissioner of general land-office, under act of congress of August 3d, 1846, and validity of sale ordered by him.*—Under the act of congress of August 3d, 1846, "providing for the adjustment of all suspended pre-emption land-claims," (U. S. Statutes at Large, vol. 9, pp. 51-2,) the commissioner of the general land-office being authorized to order, absolutely and unconditionally, the sale of lands which, under the provisions of that act, shall have reverted to the United States, the fact that he instructed the officers of the district land-office to offer such lands for sale, "if, after a careful examination of the books and maps in their office, there appeared on them no objection to offering the same for sale," does not affect the validity of the purchaser's title, when it is not shown that any valid objection to the sale appeared on the books and maps of the district office. Moreover, the said act of congress having confided the question of sale *vel non* to the discretion of the commissioner of the general land-office, and having failed to prescribe any mode of ascertaining the existence of the facts on which depended the propriety of a sale, the ordering of the sale by the commissioner is evidence that the facts existed which rendered such sale proper.

2. *Transfer of pre-emption right.*—Under the act of congress of May 29th, 1830, granting pre-emption rights to settlers on the public

lands, (U. S. Statutes at Large, vol. 4, pp. 420–21,) an assignment or transfer of the right of pre-emption, prior to the issue of a patent, is declared to be "null and void," and does not pass the right of pre-emption to the transferree; consequently, such transferree can- not defeat a recovery by one claiming under subsequent patent from the United States, by simply showing that the transferror, prior to his assignment, had a pre-emption right to the land, and offered to pay the entrance-money to the proper land-officers, but that they refused to receive it, and would not let him perfect his entry.

3. *Error without injury in rulings of primary court.*—Where the defend-ant's title is affirmatively shown to have been wholly insufficient to overturn the plaintiff's *prima-facie* case, the appellate court will not, at his instance, inquire into the correctness of any of the rulings of the primary court adverse to him.

APPEAL from the Circuit Court of Barbour.

Tried before the Hon. C. W. RAPIER.

THIS action was brought by Thomas C. McDowell, against Robert A. McTyer, to recover a tract of land containing two hundred and forty acres, which is described in the complaint as "the south-west quarter, and the west half of the north-west quarter, of section thirty-two (32), in township ten (10), range twenty-nine (29), in the dis-trict of lands subject to sale at Montgomery." The evi-dence adduced on the trial, and the rulings of the court thereon, are thus stated in the bill of exceptions.

"The plaintiff introduced a patent for the *locus in quo*, from the United States to himself, dated April 10th, 1850; and proved, that the entry was made on the 10th January, 1850. The defendant then proved, that in November, 1849, he bought the lands in question, for valuable consideration, from John H. Howard, (who was then in possession,) and immediately took possession, and from thence hitherto has been in possession, claim-ing said lands as his own under Howard's title-bond, which was given to him at the time of his said purchase. The defendant further proved, that John Nolan and Dan-iel Nolan, in and during the years 1833 and 1834, resided on and cultivated the east half of the north-west quarter of said section, and James Nolan resided on and culti-

vated the east half of the south-west quarter of said section; that said Nolans were so residing on and culti-vating their respective tracts at the passage of the pre-emption act of 1834, and were then in possession as above stated; that they all duly applied, within the time prescribed by law, to the land-officers at Montgomery, whose duty it was to entertain such applications, for leave to enter said lands as pre-emptions, and made all neces-sary affidavits and proof to show their right of pre-emp-tion, and offered to pay the purchase-money, and to do everything preliminary to the allowance of their pre-emption right in said lands; that said officers would not permit them, nor either of them, to enter said lands, nor to prove or take any right of pre-emption thereto, or to any part thereof, on the ground that said lands had been reserved and set apart to Creek Indian reservees, under the treaty of 1832 with the Creek Indians; that at the time of said application by said Nolans, and thence up to plaintiff's entry of said lands, the public books and maps in the land-office at Montgomery, relating to, show-ing and exhibiting said lands, were marked, in red ink, with the capital letters, *I. R.;* that the section embracing the *locus in quo* was so marked on said maps; that said letters stood for and meant *Indian Reservation,* and indi-cated that said entire section was reserved and set apart to Creek Indians under said treaty, and were so under-stood in said land-offices, and by every one inspecting said maps and books; and that said map was open to the inspection of the public. It was further proved, that said Nolans sold all their said pre-emption claims, about the last of the year 1834, to said John H. Howard, who paid them a valuable consideration therefor, took posses-sion of said lands during the same year, claiming them as his own, and held and cultivated them from that time until his sale to the defendant in this case.

"The plaintiff proved, in reply, that said lands were offered for sale, in 1847, under the act of congress approved August 3, 1846, and under instructions from the commissioner of the general land-office to the land-officers at Montgomery; by which instructions, said officers

4

in Montgomery were ordered to offer said lands at public sale, if, after a careful examination of the books and maps in their offices, there appeared on them no objection to offering the same for sale. It was conceded, that said lands were never offered at public sale by the United States, except under the act and instructions above mentioned. The plaintiff also introduced copies from the books of the land-office at Washington, containing a statement, or memorandum, that a pre-emption certificate had issued in the year 1842, in favor of Daniel Nolan, for the east half of the north-west quarter of said section; another, in favor of John and Daniel Nolan, for the west half of the north-east quarter of said section; another, in favor of James Nolan, for the west half of the south-east quarter of said section; and that the east half of the south-east quarter was located to Kotchimiko, an Indian. The said Nolans, who were witnesses for the defendant, testified, that neither of them had ever applied for, received or accepted from the United States government any certificate, patent, or other evidence of title to any land in said section, and had never got any other land in lieu of their said pre-emption claims. Before the introduction of said copies in evidence, the defendant objected to their admission, if offered to prove the relinquishment of pre-emption to the lands in suit by said Nolans, or that they or either of them, as pre-emptors, had in fact entered the lands therein specified; but, though offered with such view, the court overruled the objection, and admitted said copies in evidence. The defendant also offered in evidence a copy of the original map on file in the department of Indian affairs at Washington, embracing the whole of said section thirty-two; on which map, the whole of said section, including the lands here in suit, was colored with red ink. Accompanying said map, were the following certificates." (The first certificate is that of "Charles E. Mix, acting commissioner of Indian affairs," to the effect that "the above is a correct extract from the map exhibiting the location of the Creek lands in Alabama, under the treaty of March, 1832; that said map designates township ten (10), range twenty-nine

McTyer v. McDowell.

(29), and that portion colored in red was assigned by Col. Abert to Creek Indian reservees." The other certificate is that of Robert McClelland, secretary of the interior, as to the official character of Charles E. Mix.) "The plaintiff objected to these certificates, on the ground that the keeper of the map could only certify to the truth of the copy, and not that the lands colored in red were Indian reservations, or that the red color meant Indian reservation. The court sustained the objection, and excluded the map; to which the defendant excepted."

"This being all the evidence in the cause, the defendant asked the court to charge the jury as follows:

"1. That [if] good objections to offering the lands in question for sale appeared on the books and maps of the land-office at Montgomery, at and before the advertising and offering of the same for sale, then the offering for sale was unauthorized.

"2. That if they believed the evidence in relation to the land being marked *I. R.*, and in relation to its being an Indian reservation, and in relation to the evidences thereof existing in the land-office at Montgomery, then they might find that good objections to offering the said land for sale did appear on the maps in the land-office at Montgomery, at and before the advertising and offering said land for sale.

"3. That if the offering of said lands at public sale by the United States officers was unauthorized, then the same was not subject to private entry, and the patent is void, as against McTyer, if he was in adverse possession, under *bona-fide* color of title, at the time of said entry; and that if they find the offering for sale unauthorized, and that McTyer was in actual possession under *bona-fide* color of title, then they must find for the defendant.

"4. That if they believed all the evidence, they must find that the lands in dispute were set apart to an Indian reservee, under the treaty of 1832; and, if so, they may find for the defendant.

"5. That if they find there was no Indian reservation, and that the Nolans, or some one of them, acquired a preemption right to the land in dispute, or to some part of

it, and offered to make proof and pay the purchase-money for the same, and to do all the law required to perfect their title, and were not permitted to do so by the land-officers, because of the lands being an Indian reservation, or of their saying or believing so,—then, as to the land in that predicament, the plaintiff is not entitled to recover.

"6. That if Howard bought the lands in dispute from the Nolans, and McTyer was in actual possession thereof, at and before the time of plaintiff's entry, under *bona-fide* color of title, for which he had paid a valuable consideration, then the plaintiff's entry of the land was irregular, and the patent, as against McTyer, is void.

"7. That if they believed the evidence in relation to the pre-emption right in the Nolans, then they must find for the defendant.

"8. That if they believed the evidence in relation to the lands in controversy being an Indian reservation, they must find for the defendant.

"9. That if they believed all the evidence, they must find for the defendant.

"The court refused each of these charges, and instructed the jury, in lieu thereof, that in order to invest the Nolans with such legal title as would defeat the plaintiff's patent, they must have actually paid the entrance-money, and received a certificate.

"To all of which said several rulings of the court, as to the introduction of evidence, refusals to charge as requested, and charge given, the defendant excepted;" and he now assigns the same as error.

J. L. PUGH, for appellant.

JOHN COCHRAN, *contra*.

STONE, J.—It may be conceded, for the purposes of this opinion, that a patent which issues for lands which are reserved from sale, is void, and may be so declared in a proper case, either in chancery or at law.—See Stephens v. Westwood, 20 Ala. 275-8; Ladiga v. Rowland, 2 How. Sup. Ct. U. S. 581; Crommelin v. Minter, 9 Ala. 594; Saltmarsh v. Crommelin, 24 Ala. 347; Stoddard v. Cham-

bers, 2 How. U. S. 317; Hit-tuk-ho-mi v. Watts, 7 Sm.
& Mar. 363-6; Gonzalees v. Hoover, 6 Serg. & R. 118;
Gingrish v. Foltz, 19 Penn. 38, 41; Wright v. Rutgers,
14 Missouri, 585.

The land in controversy in this suit was ordered into
market, and sold, under the authority conferred on the
commissioner of the general land-office, by the act of
congress of Aug. 3d, 1846.—9 Statutes at Large, 51-2.
By that statute, the commissioner was authorized to
order into market, after due notice, and without the for-
mality and expense of a proclamation of the president,
all lands of a certain class—this being within the class—
which, in his judgment, it would be proper to expose to
sale.    Under this statute, the commissioner of the gen-
eral land-office instructed the land-officers at Montgomery
to offer said lands at public sale, if, after a careful exami-
nation of the books and maps in their offices, there,
appeared on them no objection to offering said lands for
sale.    They offered these lands for sale, and no person
purchasing them at said public offer, the plaintiff in this
suit, some two or three years afterwards, purchased them
at private sale, and, obtaining the patent of the general
government, instituted this suit against the defendant to
recover the possession.

It is contended for appellant, that this sale is void,
because the commissioner of the general land-office did
not himself order the lands into market, without refer-
ring any question to the land-officers at Montgomery.
From anything that appears in the present record, we
can not learn that there was in the land-office in Mont-
gomery any evidence which showed that said lands should
not be offered for sale, except the letters *I. R.* marked
on the map of said section.    These letters, *I. R.*, it is
shown, when employed as in this case, are the initials of
*Indian Reservation*, and, unexplained, denote that the
lands thus marked are covered by locations to heads of
Indian families, under the Creek treaty of 1832.    It is
manifest that the marking of these letters, *I. R.*, on the
entire section 32, 10, 29, was the result of mistake; and
as to the lands in controversy in the present suit, it does

not appear that, " on a careful examination of the books and maps in the land-office at Montgomery, there appeared on them any objection to offering said lands for sale." Under these circumstances, from any thing which appears to us, the commissioner of the general land-office, so far as evidence was afforded by the books and maps in the land-office at Montgomery, was authorized to order the said lands into market, absolutely and unconditionally. Having the absolute right to order the sale, it certainly cannot vitiate the title that he exercised greater circumspection than the law required at his hands. The legal import of his order was, *In my judgment, these lands should be ordered into market, and I direct you to offer them. If, however, on a careful examination of the books and maps in your office, you discover any sufficient cause for withholding the sale, then you are instructed not to put them into market.*

But there is another answer to this objection, which we think full and complete. It will be observed that, under the act of congress of Aug. 3d, 1846, the question of sale *vel non*, was confided to the judgment—*discretion*—of the commissioner of the general land-office. No limits were prescribed to the exercise of his judgment or discretion. He was made the sole judge of the propriety of a sale, and no rules, or mode of ascertaining the existence of the facts, were prescribed for him. The case is within the rule which declares, that where an officer is clothed with authority to do an act upon certain exigencies, and no rule is laid down for ascertaining that the exigency has arisen, the doing or performance of the act by the officer is evidence that the exigency exists. Martin v. Mott, 12 Wheat. 19 ; Vanderheyden v. Young, 11 Johns. 150 ; Stuyvesant v. Mayor &c. of New York, 7 Cow. 588.

[2.] What we have said above is applicable to this case as made by the plaintiff's title, and the acts of the land-officers which led to the sale. It does not reach the question of the pre-emption right as claimed by the Nolans. The bill of exceptions recites, that one of the Nolans lived on and cultivated the east half of the south-

west quarter of section 32, township 10, range 29, during the years 1833 and 1834; and that he was so occupying and cultivating said half quarter-section, when the act of congress of June 19th, 1834, was passed.—4 Stat. at Large, 678. That act revived the pre-emption act of May 29th, 1830, and continued it in force for two years from June 19th, 1834. The bill of exceptions further recites, that Nolan, within the time prescribed by law, offered to make to the land-officers at Montgomery proof of his cultivation of said land in 1833, and occupation on June 19th, 1834; that he offered to pay the entry-money, and that the land-officers refused to receive the proof or the money, because the land stood in their offices as an Indian reserve. The bill of exceptions does not inform us that any offer was made to enter any of the lands involved in this suit, except the said east half of the southwest quarter of section 32. Said Nolans, about the last of the year 1834, sold their said pre-emption claims to one Howard, who paid them a valuable consideration, and the same year took possession, claiming the lands as his own; and he continued in possession until he sold to McTyer, in 1849, since which time McTyer has held possession of the lands under said purchase. McTyer, when he purchased from Howard, received from him a bond to make title, and holds possession under claim of right. Under his possession and claim thus acquired, it is contended that plaintiff can not recover in this suit.

It is not pretended that Nolan, or any one claiming under him, has ever received any patent, or other evidence of title, from the federal government. This being the case, under the act of congress of 29th May, 1830, (4 Stat. at Large, 421,) the sale by Nolan to Howard, in 1834, was inoperative and void *as a transfer of Nolan's right of pre-emption.*—See last clause of § 3. If, then, there existed in any one a right to enter, by pre-emption, said land at the *minimum* government price, that right was in Nolan, and was not transferred either to Howard or McTyer, because the right to enter could not be transferred. Whether, under the statutes of 1830 and 1834, the abandonment of the possession by Nolan, and the sale by him to Howard

of all that was vendible in his claim to said land—viz., his right as against other private persons to occupy—was a surrender of his right to enter the land as a pre-emptor under the acts of congress of 1830 and 1834, we need not inquire. That question is not presented by this record.

The nature, extent and value of the right or claim conferred by the pre-emption statutes on actual settlers on the public lands, is a question upon which the adjudged cases do not agree. In some, it is held to be more than a mere privilege.—See Lyttle v. Arkansas, 9 How. U. S. 315-33; Cunningham v. Ashley, 14 ib. 377, 383, et seq.; McAfee v. Keim, 7 Sm. & Mar. 780; Threadgill v. Pintard, 12 How. U. S. 24; Gingrish v. Foltz, 19 Penn. 38; March v. Gonsoulin, 16 La. 84; U. S. v. Fitzgerald, 15 Pet. 407; Perry v. O'Hanlan, 11 Mo. 385; Glanton v. Anthony, 15 Ark. 543; Wynn v. Morris, 16 ib. 414; U. S. v. Stanley, 6 McL. 409; Griffith v. Deerfelt, 17 Mo. 31. See, also, Glenn v. Thistle, 23 Miss. 42; Nelson v. Sims, ib. 383; Wright v. Rutgers, 14 Mo. 585; 12 ib. 333. On the other hand, there are many authorities which hold, that the settler or pre-emptioner has no title which he can sell or incumber.—Craig v. Tappin, 2 Sandf. Ch. 78; Wilkinson v. Mayfield, 27 Miss. 542; Brown v. Throckmorton, 11 Ill. 529; Gr. Gulf R. R. & Bank. Co. v. Bryan, 8 Sm. & M. 234; Doolittle v. Harrington, 1 Morris, 226; Delamay v. Burnett, 4 Gilman, 454; Bowen v. Higbee, 9 Mo. 259.

In this State, this subject has been frequently considered. In Rhea v. Hughes, (1 Ala. 219,) this court, in speaking of the interest which a settler on the public lands acquires, said: "His interest in the land is a mere permission to occupy it, personal to himself, and not capable of transfer so as to give any legal right to any other person." In another place, the court had said: "It [his claim] is neither an estate by sufferance, at will, or for years, nor can the continued occupation of the land ever operate so as to create a legal title."—See, also, Johnson v. Collins, 12 Ala. 322; McElyea v. Hayter, 2 Por. 148; Land v. Hopkins, 7 Ala. 115; Elmore v. Harris, 13 ib.

360; Haden v. Ware, 15 *ib*. 149; Cruise v. Riddle, 21 *ib*. 791; Pettit v. Pettit, 32 *ib*. 288; Cothran v. McCoy, 33 *ib*. 65; Burns v. Hamilton's Adm'r, 33 *ib*. 210.

We do not, however, deem it necessary, in this case, to determine whether Nolan has forfeited all right to the lands in controversy, or whether he has any, and what remedy. The plaintiff below, by the production of his patent, made out a *prima-facie* case for recovery, and the defense offered was insufficient to overturn it, as we will now proceed to show.

The plaintiff, McDowell, by his patent from the United States, proved himself to be the owner of all the title which the federal government possessed, or could convey. He had purchased the land, and paid the government price for it. Nolan has paid nothing, and we can not know that he ever can or will pay the purchase-money for the land. Neither the United States, nor the plaintiff in this suit, has any power to compel him, either in law or equity, to pay the purchase-money. Neither McTyer nor Howard is the owner of Nolan's pre-emption right— we mean, his right to enter the land at the *minimum* price—because such right, before patent issues, is not the subject of sale. If, then, this mere privilege in Nolan, and possession in Howard and McTyer under him, can, at law, defeat a recovery by McDowell, the patentee, then McTyer or Nolan has acquired a perfect and independant title to this land, without paying the government or McDowell anything for it, and without incurring any liability to pay anything. An argument which leads to such results, is not sound.—Iverson v. Dubose, 27 Ala. 418.

[3.] We hold, that the defense relied on in this case is wholly insufficient to overturn the plaintiff's *prima-facie* case, and the court would have been justified in pronouncing it so. This being the case, we will not inquire whether the court may or may not have committed errors in the various rulings on the trial.—Gilmer & Taylor v. City Council of Montgomery, 26 Ala. 665; Shep. Dig. 568-9, §§ 82, 108.

Judgment of the circuit court affirmed.