Summers, J.
If the plaintiffs are entitled to a specific performance of the agreement, then they have an easement created bv parol in the lands of the defendants.
An easement is a right without profit, created by grant or prescription, which the owner of one estate may exercise in or .over the estate of another for the benefit of the former. A license is a personal, revocable and non-assignable privilege, conferred either by writing or parol, to do one or more acts upon land without possessing any interest therein. The Greenwood Lake & P. J. Railroad Co. v. The N. Y. & G. L. Railroad Co., 134 N. Y., 435. Section 4198, Revised Statutes, provides that: “No lease, estate or interest, either of freehold or term of years, or any uncertain interest of, in, or put of lands, tenements, or hereditaments, shall be assigned, or granted, except by deed, or note in writing, signed by the party so assigning or granting the same, or his agent thereunto lawfully authorized, by writing, or by act and operation of law.” This statute would seem to settle the question of the right to a *125 decree for specific performance against the plaintiffs, but it is contended that it is the well settled law of this state that such an agreement is a parol license and that such license when executed is irrevocable. Mr. Freeman in a note to Lawrence v. Springer, 31 Am. St. Rep., 702-715, says: “At common law, a parol license to be exercised upon the land of another creates' an interest in the land, is within the statute of frauds, and may be revoked by the licensor at any time, no matter whether or not the licensee has exercised acts under the license, or expended money in reliance thereon. In many of the states this rule prevails, while in others the licensor is deemed to be equitably estopped from revoking the license, after allowing the licensee to perform acts thereunder, or to make expenditures in reliance thereon. These two lines of cases cannot be reconciled; for one of them holds that an interest in land cannot be created by force of a mere parol license, whether executed or not, while the other declares that where the licensee has gone to expense, relying upon the license, the licensor may be estopped from revoking it, and thus an easement may be created. The former line of cases, it seems to us, is founded upon the better reason. They decide that a parol license to do an act on the land of the licensor, while it justifies anything done by the licensee before revocation, is revocable, at the option of the licensor, and this, although the intention was to confer a continuing right, and money has been expended by the licensee upon the faith of the license. Such license cannot be *126 changed into an equitable right on the ground of equitable estoppel.”
To the same effect is Browne on the Statute of Frauds, Section 31; Jones on Easements, Section 84; Bigelow on Estoppel, 5th Ed., 666.
In Lawrence v. Springer, supra, 49 N. J. Eq., 289, Beasley, C. J., says: “It has not been, and it cannot be, denied that such a grant as the one in question cannot be enforced in a court of law; such easements, being incorporeal, lie in grant, and their creation requires an instrument under seal. Nor is it questioned,' nor questionable, that a parol imposition of a servitude of this kind upon land is in flat contradiction of the statute of frauds. It is true, indeed, that in one class of cases, as is well known, courts of conscience have felt dispensed from putting in force the provisions of that act. This has been the course pursued where a parol agreement for the purchase of lands, or of some interest in them, has been performed to the extent of possession having been taken in part execution of such contract. But while this is the undeniable rule in equity, it should be ever borne in mind that its introduction has been regretted by the wisest judges. 'The statute/ says Lord Redesdale, 'was made for the purpose of preventing perjuries and frauds, and nothing can be more manifest to any person who has been in the habit of practicing in courts of equity than that the relaxation of that statute has been a ground of much perjury and much fraud. If the statute had been vigorously observed, the result would probably have been that few instances of parol agreements would have occurred. Agree *127 ments, from the necessity of the case, would have been reduced to writing. Whereas, it is manifest that the decisions on the subject have opened a new door to fraud.’ And these strictures are pointed with the emphatic declaration that ‘it is therefore absolutely necessary for courts of equity to make a stand, and not carry the decisions further.’ Lindsay v. Lynch, 2 Schoales & L., 4. And in the same vein, Judge Story (2 Story’s Eq. Jur., Section 766) says that ‘considerations of this sort have led eminent judges to declare that they would not carry the exceptions of cases from the statute of frauds further than they were compelled to do by former decisions.’ To the same purpose are the criticisms of Chancellor Kent in Phillips v. Thompson, 1 Johns. Ch., 149, and of Chancellor Zabriskie in Cooper v. Carlisle, 17 N. J. Eq., 529.”
Pomeroy in his work on Specific Performance of Contracts referring to the doctrine of the irrevocability of a parol license when executed, says that it is opposed to the common law doctrine concerning licenses as it'prevails in England and in most of the American states. In Rodefer v. Railroad Co., 72 Ohio St., 272, the opinion of Andrews, J., in Crosdale v. Lanigan, 129 N. Y., 604, was quoted from at length with approval, and it is unnecessary to repeat here what was said there. In that opinion he says that it is plainly the rule of the statute, as well as the rule required by public policy, that such a'license though executed is revocable.
See, also, Hicks v. Swift Creek Mill Company, 133 Ala., 411, 91 Am. St. Rep., 38; Pitzman v. Boyce, 11 Mo., 387, 33 Am. St. Rep., 536; *128 Thoemke v. Fiedler and another, 91 Wis., 386; Stewart v. Stevens, 10 Col., 440; The St. Louis National Stock Yards v. The Wiggins Ferry Company, 112 Ill., 384.
The cases are too numerous to cite but may be readily found by reference to the reports and textbooks already cited.
The early cases were grounded on some early English cases which were overruled in the leading case, Wood v. Leadbitter, 13 Meeson & W., 838.
The cases of Wilson et al. v. Chalfant, 15 Ohio, 248, and Hornback v. The Cincinnati & Zanesville Railroad Company, 20 Ohio St., 81, are cited as supporting the doctrine of the irrevocability of such a license. The former seems to have been based upon precedents that were in accord with the early English decisions, which, as we have seen, have been overruled. The later case is not authority for the doctrine, but is a case of a parol agreement for the purchase of an interest in lands which has been performed to the extent of possession having .been taken in part execution of the contract. The later case decided by the Supreme Court Commission, Wilkins v. Irvine, 33 Ohio St., 138, is not in accord with'the earlier doctrine, but is in accord* with the modern doctrine and it is there held that: “A written license, without seal and unacknowledged, to enter upon and imbed water pipes in the land of another, with privilege to enter and repair them,, creates no interest in, nor incumbrance upon the land such as will disable the owner thereof from making a good and sufficient deed conveying a good title thereto.” It may be added that in that case the written license had been executed,, and in *129 the opinion it is said: (144) “It gave the Cleveland Rolling Mill Company no dominion over the land, nor did it create, in its favor, an easement in the land. If its terms had been violated by Brooks or his grantees, the jurisdiction of a court of equity could not have been successfully invoked to enforce a ' specific performance. The remedy, if any it had, would have been an action for damages.”

Judgment affirmed.

Price, C. J., Shauck, Crew and Spear, JJ., concur.