## JOHNSON v. McGEHEE & THOMAS.

1. When a deed is offered in evidence and is objected to for erasures, interlineations, or blank spaces, supposed to be apparent on examination, the precise point of objection must be shown in a distinct manner, otherwise, the exception is incapable of revision.

2. A notary public is authorized to take the proofs and acknowledgment of deeds, in the county for which he is commissioned, although the land conveyed may be situated in another county.

3. No period is designated by the statute, within which the proof or acknowledgment must be taken. It may therefore be taken at any time; but the rights of a subsequent *bona fide* purchaser will not be affected, unless the deed is recorded within six months after its execution.

Johnson v. McGehee & Thomas.

4. The sixth article of the treaty made with the Creek tribe of Indians, on the 24th of March, 1832, [5 Porter, 416] directs, that twenty-nine sections of land may be located, and that patents for the same may then issue to such persons, being Creeks, to whom they shall be assigned by the Creek tribe. The assignment of these lands by the tribe, is an act which must be communicated to the executive to enable him to direct the issuance of the patents, in conformity with the treaty: it is therefore a public document, the custody of which is properly committed to some one of the excutive departments.

5. All the official intercourse of the government with the several Indian tribes, is carried on by the War Department; and the documents connected with such intercourse, are deposited in the Bureau of the Commissioner of Indian affairs. A copy of the assignment of the lands reserved under the sixth article of the treaty of 1832, is properly authenticated by his certificate, accompanied with the seal of the War Department.

6. A patent issued after the commencement of a suit, cannot be given in evidence to support the action: nor is a patent, so issued, evidence of the facts recited in it, so as to effect the defendant to the suit.

7. A location or allotment of the lands assigned under the sixth article of the treaty of 1832, is necessary to show title in one who claims title previous to the issuance of the patent, and without proof of such allotment or location, no action involving the title, can be maintained previous to the issuance of the patent.

8. The location or allotment is the mode by which the proper executive officer determines, that the choice of land made by the Creek tribe, is approved, and that the lands are not subject to other claims. When this is done, an inchoate legal title is created, capable of transmission by those to whom they are assigned, by the Creek tribe.

9. It is unnecessary to give evidence, that the assignment was made by the chiefs and head men of the tribe, or that those who made it, were authorized by the tribe. The recognition of these persons, by the government, as the chiefs and head men, is conclusive on the Courts, which are bound to follow the action of the government, in its recognition of other powers.

Writ of error to the Circuit Court of Benton county.

McGehee & Thomas sued Johnson, in an action of trespass to try titles, to recover a tract of land in Benton county. The writ *issued 26th April*, 1836, and the trial was had at the spring term of the Circuit Court, for the year, 1838. The trial resulted in a verdict and judgment for the plaintiffs.

To prove their title to the land in controversy, the plaintiffs offered in evidence, a deed from Benjamin Marshall and others, (who are named as the assignees of the Creek tribe of Indians,

in the instrument hereafter set out,) by which the land sued for,
is granted to the plaintiffs. This deed is dated 26th October,
1836, and is authenticated, by the certificate of a notary, in the
following terms: "Mobile County, State of Alabama: Person-
ally appeared before Charles J. Fox, a notary public in and for
said county and state, duly commissioned and sworn, residing in
the city of Mobile, the within named John B. Hogan, one of the
subscribing witnesses to the foregoing deed, who, being duly
sworn, deposeth and saith, that he saw B. Marshall [and the oth-
er grantors in the deed, naming them:] whose names are sub-
scribed thereto, sign, seal, and deliver the same to the said
William McGehee and John H. Thomas; that he, this deponent,
subscribed his name, as a witness thereto, in the presence of
the said B. Marshall, [and the other grantors] and that he saw
the other subscribing witnesses, H. G. Barclay and R. D. Ro-
land, sign the same in the presence of the said B. Marshall, [and
the other grantors] and in the presence of each other, on the
day and year therein named, to wit: on the 26th day of Octo-
ber, 1835.                          JOHN B. HOGAN.
    Witness my hand and seal notarial, this 28th February, A. D.
1838, at Mobile, Alabama.
    [L. S.]                    CHAS. J. FOX, Notary Public."
    The defendants resisted the introduction of this deed, for the
reasons, 1st. That it was not so proved and authenticated as to
authorize its admission without further evidence: and 2d. Be-
cause of the many interlineations, erasures, and blanks, which
appeared throughout the same. The deed was permitted to be
read as evidence of title, from the grantors therein named, to the
plaintiffs, and the court decided that the deed could only be im-
peached by evidence. To all this the defendant excepted.
    The plaintiffs then offered, as further evidence of title, a cer-
tified copy of an assignment made by certain persons, styling
themselves Creek chiefs of the Creek tribe of Indians, by which
the land in controversy was assigned to the grantors of the
plaintiffs. This instrument is dated the 4th October, 1835, and
recites, that those signing it, "for the use or behoof of the said

tribe, do make the following assignment of the twenty-nine sections which the said tribe is authorized to assign, to persons, being Creeks, by the sixth article of the treaty made at Washington on the 24th day of March, 1832." Then follows a description of the sections assigned, among which is found, the land which is the subject of this suit. This instrument is signed and sealed by a number of persons, being names which we suppose to be Indian; and purports to have been executed in the presence of many witnesses, among whom is the sub-agent of the Creeks, east of the Mississippi. Appended to it, are these certificates:

"I certify that the foregoing is a true and correct copy of the original assignment on file in this office. Office of Indian Affairs, March 29th, 1838.     C. A. HARRIS, Commissioner."

"Be it remembered, that C. A. Harris, who has signed the foregoing certificate, is commissioner of Indian affairs, and that to his attestations, full faith and credit are, and ought to be given.

In testimony whereof, I have hereunto subscribed my name, [L. s ]  and caused the seal of this Department to be affixed, on this 29th day of March, 1838.

S. COOPER, Acting Secretary of War."

This instrument was objected to by the defendant, for the reasons, 1st. Because the original is the best evidence; this not being such a document as is required to be on file in the War office: 2d. Because this, as a copy, is not sufficiently authenticated. These objections were overruled, and the assignment read in evidence.

The plaintiffs then offered, as further evidence of title, a patent, issued from the land office of the United States, under the seal of the Land office, and signed by the President of the United States, being dated 18*th of November*, 1836. This patent recites the sixth article of the treaty, of 24th March, 1832; and also, "that the chiefs and head men of the Creek tribe of Indians, on the 7th day October, 1835, assigned a certain section of land, [the one in controversy] to the grantors of the plaintiffs, as being one of the sections to which the said tribe was entitled, by

the sixth article; and that the said assignment having been approved by the President of the United States, on the 16th day of April, 1836." Then follows a grant to the grantors of the plaintiffs, of the land, the subject of this suit. This patent was objected to by the defendant, 1st. As proving nothing: and 2d. Because it was no evidence of title, it having been issued since the commencement of the action. These objections were overruled, and the patent admitted as evidence.

This being all the evidence of title, the defendant requested the Court to charge the jury, that, in order to entitle the plaintiffs to a recovery, they must prove that their grantors were *located* on the land in question, or that it was allotted to them by grant. This charge, the court refused. The defendant further asked the court to charge the jury, that to entitle the plaintiffs to a recovery, they must prove that the persons making the assignment to the plaintiff's grantors, had authority from the Creek tribe of Indians, to make such assignment. This charge, the court also refused. The defendant further asked the court to charge the jury, that the documentary evidence of title, was not sufficient to authorize a recovery. This was also refused; and the jury were instructed that the same was sufficient, if the other proof satisfied them that the defendant was in possession of the land when the suit was instituted, and to assess such damages as the evidence showed to be a reasonable rent.

The defendant also requested the court to charge the jury, that if they believed from the evidence, that the defendant had planted his crop, and had no notice to quit until the day of the service of the writ, that the rent would not be assessed as damages. This charge was likewise refused. The defendant excepted to the several decisions of the court on the matters above stated. The assignments of error in this court, questions the correctness of each of the decisions made by Circuit Court.

WILLIAM B. MARTIN, for the plaintiff in error.
CHILTON, contra.

Johnson v. McGehee & Thomas.

GOLDTHWAITE, J.—The several questions of law, which arise out of the bill of exceptions taken at the trial of this case, will be most conveniently answered by considering them in the order in which they were presented before the circuit court :

1. The objections taken against the deed, so far as they relate to its appearance at the time when offered, cannot be noticed ; as the record transmitted to this court, shows neither erasure, interlineation, or blank space. If the deed was subject to exception for any cause of this description, *the precise point* ought to have been shown, and the objection presented in a distinct manner ; as it is otherwise, this exception cannot be reviewed.

2. The probate of the deed made before the notary public, is in strict conformity to the provisions of the several statutes directing the mode of proof. The second section of the act of 1831, [Aikin's Dig. 91] gives authority to any notary public of this State, to take and certify the acknowledgment and proof of deeds, or relinquishment of dower, *in any county for which the notary is commissioned,* in like manner and form, as was then required by law, when the same was taken before judges of the circuit or county courts, clerks of the county courts, or two justices of the peace. The restriction, *to any county for which the notary is commissioned,* does not apply to the *situs* of the lands conveyed by the deed, but applies alone to the *place* in which he may properly authenticate the proof, or acknowledgment. If it was otherwise, no officer of this description could lawfully authenticate a deed conveying lands in two or more counties. The form of this certificate is copied from the first section of the act of 1812, [Aikin's Dig. 90,] and differs from that prescribed, only in the phraseology of the attesting clause, in a manner no ways material.

3. No act of the legislature limits a period, within which an acknowledgment or the proof must be made ; although, the deed may be of no effect against a subsequent *bona fide* purchaser or mortgagor for a valuable consideration without notice, if it be not acknowledged or proved, and certified and lodged for record with the clerk of the county court, in the county where the lands are situated, within six calender months [Aikin's Digest 90.]

Here the controversy is not with one claiming, as a subsequent purchaser or mortgagee, and therefore, the statute last cited has no application to this case.

4. The objection to the admissibility of the instrument, offered to prove the assignment of the land in controversy, to the grantors of the plaintiffs, by the Creek tribe of Indians, by virtue of the sixth article of the treaty, is two fold ;—1. because it is a copy , and 2. if a copy is admissible, this is not certified in the manner required by law.    The sixth article of the treaty [5 Porter, 416] directs " that twenty more sections of land may be located, and patents for the same, may then issue, to those persons, being Creeks, to whom the same may be assigned by the Creek tribe."    The assignment, under which the plaintiffs attempted to make out an inchoate title to the land in controversy, is the only means, by which the United States can ascertain to whom the patents are to be issued, in compliance with this article of the treaty ; therefore, it is, necessarily, a public document, the custody of which, must be committed to some one of the executive officers of the government of the United States, and remain with the other public archives.

5. All the official intercourse of the government, with the several Indian tribes, is carried on by the War department ; and the documents connected with such intercourse are deposited in the office of the commissioner of Indian affairs.    This officer is, therefore, the proper custodian of the original assignment ; and his certificate, accompanied as it is, by the certificate of the Secretary of War, under the seal of that department, properly authenticates the copy offered in evidence.

6. The admission of the patent, under the circumstances of this case, was irregular.    In the case of Jones and Parsons' heirs v. Inge and Mardis' heirs [5 Porter, 327] we considered very fully, the effect of the recitals in a patent issued after the commencement of a suit; and determined, that such recitals could not operate, so as to support an action commenced anterior to the date of the patent.    In the subsequent case of Bullock v. Wilson [5 Porter, 338,] we decided that the introduction of a patent,

Johnson v. McGehee & Thomas.

in that case, was not in error, inasmuch as a legal, inchoate title was previously shown in evidence. We say, in reference to the state of facts, then shown by the record, " there can, certainly, be no objection to showing the state of such title, when the suit was commenced, and the proving that it has been consummated by an act of confirmation subsequently done. Such is the case at bar. And where the inchoate title is attacked by proof, it may be important to show, that it has been perfected ; and this, though in the particular action, the proof of the [subsequent] perfect title would not warrant a verdict." In the present case, however, as will be subsequently shown, no inchoate title was made out, therefore, the effect of the patent was not to repel an attack on the previous inchoate title, and it could only have the effect to mislead the jury, by connecting the recitals with other evidence imperfect and insufficient by itself, to establish a legal title, by which this action might have been maintained. As the patent given in evidence, was issued subsequent to the commencement of this action, and was not called in aid of the defense of a sufficient title to maintain the action, previously shown in evidence, we consider its admission was irregular ; because the recitals contained in it, were well calculated to mislead the jury, and induce the conclusion that the title was in the plaintiffs when this action was commenced.

7. The only documentary evidence of title, before the jury, was the assignment of the Creek tribe of Indians, of the land in controversy, to the grantors of the plaintiffs ; the deed to the plaintiffs, and the patent issued to the plaintiff's grantors, after the commencement of this action. On this state of evidence, the defendants requested the circuit court to charge the jury, that, a recovery ought not to be had, unless the grantors of the plaintiffs had been located on the land in question, or it had been allotted to them. This was decided in the case of Fipps v. McGehee, et al. (5 Porter, 413) in which we held, *that proof of the location* was essential, to make out an inchoate legal title to any of the sections held under the sixth article of the treaty, if title was asserted previous to the issuance of a patent : It was urged that much difficulty may exist, in ascertaining the fact of location.

25

However this may be, it is certain, that no title could arise, un
til this location was made.

8. No difficulty, in point of fact, can exist, either as to the
existence, or as to the proof of this fact ; it is not an act *in
pais,* like livery of seizin ; it is the mode, by which the proper
executive officer determines that the claim made by the Indians,
is approved by the executive, and that the lands selected by
them are not subject to other claims.   Wherever this was done,
the land was *allotted, located, and set apart* from the public
domain, in compliance with the stipulations of the treaty.   The
patent offered in this case, recites, that the assignment was appro-
ved by the president, on the 16th of April, 1836.   This recital,
if true, and if admissible in evidence, would establish the loca-
tion, as it was then, if not previously made.   It is presumed that
the means by which the officers of the land office acquired this
information, are, or may be, open to the plaintiffs.

9. It was unnecessary for the plaintiffs to establish, by proof,
that the persons whose names appear to the assignment, were
authorized to act in the name of the Creek tribe of Indians.
The assignment, as before mentioned, is the act, by which the
Creek tribe conveys the requisite information, to the United
States ; that the latter are to convey the lands assigned, to the
individuals named ; and is of no validity until recognized and ac-
ted on by the United States ; but when so acted on, it becomes
potential' to create an inchoate legal title in the assignees, for the
reasons stated in the case of Fipps v. McGehee, *et al.* No princi-
ple is more clear, than the one, which requires the courts of a
country to follow the acts of the government, in its recognition
of foreign powers; and the same principle applies with equal force,
to our relations with the Indian tribes.   Whatever persons are
recognized, by the government, as the head men and chiefs of
the Creek tribes, must be considered as such, by this court.

From what has already been said, it is sufficiently clear, that
the charges requested by the defendants, that the documentary
evidence, was not sufficient to authorize a recovery, ought to have
been given.

The other charges given, and refused by the circuit court, are not necessary to be examined, as they relate, merely, to the ascertainment of damages, and their consideration is not pressed in this court.

It remains only to announce the result of our opinion ; which is, that the judgment of the circuit court be reversed, and the case remanded for further trial.