MARSH AND MILLER *vs.* GONSOULIN.

APPEAL FROM THE COURT OF THE FIFTH DISTRICT, FOR THE PARISH OF
ST. MARTIN, THE JUDGE OF THE SIXTH PRESIDING.

Where a purchaser of public lands offers to comply with the conditions of
the law, and is prevented by the government not performing the obliga-
tions imposed on it, he is not to suffer or lose his rights on this account.

So, where the government refused to receive the money from a pre-emptor,
who had proved up his settlement right under the act of congress, passed
the 29th May, 1830, because the land was not surveyed, and a plat re-
turned to the land office; and in the mean time, the front proprietors en-
tered, *and paid the* government for the same land, under the act of 15th
June, 1832, giving the owner of land fronting on water courses, " a pre-
ference, in becoming the purchaser of any vacant land back of his own
tract." *Held*, that the pre-emptor having offered to comply with all the
conditions of the law on his part, is entitled to hold the land.

This is an action to evict the defendant, and recover from
him one hundred and sixty acres of land, which he had entered
at the land office, and proved up as a settlement right.

The plaintiffs being owners of front tracts of land, on the
bayou Teche, in 1836, entered the back lands lying adjacent
and in the rear of their fronts, under the act of congress,
passed the 15th June, 1832, giving to front proprietors the
right to purchase the rear, or back concessions, by preference
or right of pre-emption.   They paid to the government to the
amount of the purchase money, on application to the register
and receiver of public moneys, and obtained the government's
receipt therefor.

The defendant had, in the mean time, settled on this back
concession, and claimed to hold one hundred and sixty acres
under a settlement and pre-emption right, conferred by the
act of congress, passed the 29th of May, 1830.   He alleges,
that he has complied with all the requirements of said act, to
entitle him to the ownership of said land.   He prays that the
plaintiff's demand be rejected.

Upon these issues and pleadings, the cause was tried.

It appeared in evidence, that the defendant settled on the *locus in quo*, in the spring of 1829, and after the passage of the pre-emption law of 1830, he went to the land office at Opelousas, and proved up his settlement right, under said act, but the officers of the United States, would not receive the money, because the lands on which this settlement was made, had not then been surveyed by the United States' surveyor, and a plat thereof returned to the land office. The defendant tendered the price, on proving up his claim. Before the land was surveyed, the act of 1832 was passed, giving to front proprietors, the right to enter their back concessions, which, in this case, embraced the defendant's settlement. Their entry covers his claim, and the price was received by the government.

There was judgment for the defendant, and the plaintiffs appealed.

*Morse*, for the plaintiffs.

*T. H. Lewis*, for the defendant.

*Garland J.*, delivered the opinion of the court.

The plaintiffs claim the ownership of a tract of land in the parish of St. Martin, which is in the possession of the defendant, who has inhabited and cultivated it, since the spring of the year 1829.

The plaintiffs derive their title from the United States, under an act of congress, approved the 15th of June, 1832, which gives to the owner of the land fronting on a water course, "a preference in becoming the purchaser of any *vacant tract of land*, adjacent to, and back of his own tract," not exceeding in quantity the front tract. The provisions of this act, were extended to the 15th of June, 1836, and on the 7th of that month, the plaintiffs representing to the register and receiver, that the land in the rear of their tract, was *vacant*, entered the same and obtained a receipt, of the receiver of public moneys, for the money. The defendant claims the land under the provisions of an act of Congress,

giving pre-emption rights to settlers, on the public lands, approved May 29th, 1830, which says, " every settler or occupant of the public lands, prior to the passage of this act, who is now in possession and cultivated any part thereof, in the year 1829, shall be, and is hereby authorized to enter with the register of the land office, any quantity of land, not exceeding a quarter section, at the minimum price, upon making proof of such settlement and cultivation within one year. The defendant was settled on a piece of public land, in the rear of the plaintiff's tract. On the 12th of May, 1831, he made application to the register and receiver, at Opelousas, to purchase the land on which he was settled, and made the proof required to establish his occupancy and cultivation. The register and receiver, were satisfied with the evidence, and endorsed the foot of his application, " we allow the claimant to make entry and purchase of the proper legal sub-division, which may be found to embrace the settlement set forth, and proven in the foregoing notice and testimony, with the right of complement according to law."

(Signed,)     VALENTINE KING, Register.

BENJAMIN R. ROGERS, Receiver.

The aforesaid register, on the 23d of March, 1832, also gave the defendant a certificate, stating that he had been allowed to make an entry, and purchase the tract of land in question, in conformity with the act of congress, of May 29th, 1830. The defendant offered to pay for the land in May, 1831, when he made the application to purchase it, but was told, by the register his money could not be received, as the land had not been legally surveyed, and the township plat returned according to law, and they were forbidden, by instructions from the commissioner of the general land office, to receive money in such cases, but that if the money was paid in one year after the land was legally surveyed, and the plat returned, it would be sufficient, and the said instructions are in the record. On the 14th of July, 1832, congress, passed an act, supplementary to the act of 1830, in which it is expressly said, that in all cases, where a person was entitled to a pre-emption, under the act of 1830, but have not been ena-

bled to make their proof and entry, "in consequence of the public surveys not having been made and returned ; then the said settlers or occupants may complete their entry, " within one year after the surveys are made." The survey has not yet been made and returned, but the defendant, in 1837, again offered to pay for the land, and the money was refused.

The act of May 29th, 1830, certainly authorized the defendant, to enter the land, and gave him a preference over all other persons. He did all in his power to comply with the conditions of the law, and was prevented from completing his purchase, by the United States not performing all the obligations imposed on them. It was the duty of the government to have the land surveyed, and the plat returned to the register's office. The defendant could not do it. He has complied with all the conditions of the law that were in his power, and as the other party has not complied with their obligations, it is not his fault, and he is not to suffer by it. It is to be observed, that the plaintiffs were authorized to purchase " any vacant tract of land," adjacent to their own tract, and it cannot be said the land in possession of defendant, was *vacant*. We have been referred to several decisions of the court, reported in 9 *Louisiana Reports*, 56. 10 *Louisiana Reports*, 159 and 11 *Louisiana Reports*, 322.

These decisions we think correct, but a material difference between those cases and the one under consideration, seems to have escaped the observation of the counsel for the appellants. The pre-emption rights in those cases, arose under the 5th section of an act of congress, relating to land titles in Louisiana, approved April 12th, 1814, which referred to an act, approved February 5th, 1813. *Land Laws, volume 1st,* 631, 653. Under those laws, the person claiming a right of pre-emption, in addition to the proof of occupancy and cultivation, was bound to pay in cash one-twentieth part of the purchase money, whether the land was surveyed or not. In none of the cases cited was the money paid. Suppose it had been paid, and the proof made in accordance to law, this court would probably not have decided as it did. It may be

WESTERN DIST.
*September*, 1840.

MARSH & MILLER
*vs.*
GONSOULIN.

Where a purchaser of public lands offers to comply with the conditions of the law, and is prevented by the government not performing the obligations imposed on it, he is not to suffer or lose his rights on this account. So, where the government refused to receive the money from a pre-emptor, who had proved up his settlement right under the act of congress, passed the 29th of May, 1830, because the land was not surveyed and a plat returned to the land office ; and in the meantime the front proprietors entered *and paid the* government for the same land, under the act of 15th of June, 1832, giving the owner of land fronting on watercourses, "a preference in becoming the purchaser of any vacant land back of his own tract." *Held,* that the pre-emptor having offered to comply with all the conditions of the law on his part is entitled to hold the land.

WESTERN DIST.
September, 1840.
━━━━━━
BREAU
vs.
LANDRY ET AL. said no money was paid in this case, the answer is, none was required until the land was surveyed. The government can compel the defendant to pay as soon as it pleases, but until it does, he is not to suffer for the neglect. We therefore, think the court below, did not err in its judgment for the defendant, and affirm it with costs.