Bates v. Herron.

---

## BATES *vs.* HERRON.

[REAL ACTION IN NATURE OF EJECTMENT.]

1. *What title will sustain or defeat ejectment.*—A patent from the United States, uncontrolled and unaffected by other evidence, is sufficient to sustain an action of ejectment; and a receipt from the receiver of a local land-office, acknowledging full payment by the defendant for the lands in controversy, is sufficient to defeat such action, if uncontrolled and unaffected by other evidence.

2. *Validity of patent, and who may impeach it.*—A patent from the United States, purporting to grant lands in which the government had no title, or which were not subject to sale, is void as an evidence of title, and may be so declared in an action at law against one who has lawful possession, or is in under color of title; but, subject to this qualification, its validity cannot be impeached on account of defects in the proceedings preliminary to its issue.

3. *Powers of commissioner of general land-office.*—Under the act of congress of July 4th, 1836, (U. S. Statutes at large, vol. 5, p. 107,) the commissioner of the general land-office has authority to direct the cancellation of a certificate of entry in a district office; and his instructions to the local register and receiver, to enter on the books of his office the cancellation of the location of a bounty land-warrant, on account of an informality in the assignment of the warrant, to inform the party in interest of the cancellation, "and to permit him within a reasonable time to locate the same tract with a land-warrant legally assigned," coupled with the subsequent confirmation of the location by the issue of a patent, have the effect of canceling an intermediate certificate of entry under the graduation act.

Bates v. Herron.

APPEAL from the Circuit Court of Barbour.
Tried before the Hon. ROBT. DOUGHERTY.

THIS action was brought by Allen Bates, against Edward M. Herron, to recover a tract of land in Barbour county, described in the complaint as "the south half of the south-east quarter of section twenty-eight, and the north half of the north-east quarter of section thirty-three, in township ten north, of range twenty-four east, in the district of lands subject to sale at Elba," together with damages for its detention. The plaintiff deduced title to the land under a patent from the United States, dated December 29, 1855, which purported to be issued to him, under the act of congress of February 11, 1847, as the assignee of James D. Askew, and was based on the location of a bounty land-warrant; while the defendant's title consisted of a certificate of entry from the receiver of the land-office at Elba, dated October 10, 1854, under the graduation act of August 4, 1854.

On the trial, after the plaintiff had read in evidence his patent, and the defendant his certificate of entry, the plaintiff offered in evidence a transcript from the records of the general land-office at Washington, which showed these facts: On the 19th February, 1850, a land-warrant was issued to James D. Askew, under the act of congress of February 11, 1847; which warrant was assigned by said Askew on the 27th March, 1850, to Lewis D. Collins, who, on the 24th June, 1852, assigned the same to plaintiff; but the last assignment was not in conformity with the regulations prescribed by the general commissioner of March 23, 1852. On the 22d December, 1853, the plaintiff located this warrant on the land in controversy; and the warrant, with its location, was transmitted to the general land-office. On 10th May, 1854, the warrant was returned by the commissioner of the general land-office, to the register of the local office at Sparta, accompanied · with a letter which contained the following instructions: "The location has been canceled, because the last assignment of the warrant is not in the form required by the regulations of March 23, 1852. You will please enter the

cancellation on the books of your office; advise the party in interest of the cause thereof, at your earliest convenience; return him the enclosed warrant certificate, on the surrender of his duplicate certificate of location; and, if there is no legal objection, permit him within a reasonable time to locate the same tract with a warrant legally assigned, or to enter it with cash."

On the 10th October, 1854, as above stated, the defendant entered the land, at the land-office at Elba, under the graduation act of 1854. On the 31st October, 1854, the plaintiff wrote a letter to the commissioner of the general land-office at Washington, asking the reason why he had never received a patent; and, on learning from the commissioner's reply that his location had been canceled on account of the informality in the assignment of the warrant, procured a proper assignment, under which he again located his warrant on the same land on the 6th June, 1855, and procured a patent on the 29th December, 1855, as above stated.

"This being all the proof, the court charged the jury, that if they believed the evidence, they must find for the defendant; to which charge the plaintiff excepted, and took a nonsuit;" and he now assigns the charge of the court as error, and moves to set aside the nonsuit.

GOLDTHWAITE, RICE & SEMPLE, for appellant.—A patent is a complete appropriation of the land it describes, and no defects in the preliminary steps can be tried in a court of law.—Boardman v. Reed's Lessees, 6 Peters, 328; Bagnell v. Broderick, 13 Peters, 436. A patent, issued on the location of a bounty land-warrant, under the act of congress of 11th February, 1847, and the subsequent act of March 22, 1852, making such warrants assignable, is *prima-facie* evidence that every requisition of the law was complied with.—Bouldin v. Massie's Heirs, 7 Wheaton, 122.

The provision of the act of 1852, that such warrants shall be assigned "by deed or instrument of writing, made and executed after the taking effect of this act, according to such form, and pursuant to such regulations

as may be prescribed by the commissioner of the general land-office," was intended' to evidence the authority of the government to issue the patent to the person to whom it might issue it, and to protect the United States and the owners of such warrants from fraud; and a third party cannot object to any mere irregularity or informality of the written assignment, or claim any right or benefit therefrom, especially after the patent has issued to the assignee. After the patent has thus issued, the assignment itself is no longer a paper essential to the title, for the title is consummated by the patent; and proof of the assignment, or of its regularity, is immaterial, and certainly cannot be insisted on by a third person.—7 Wheat. 122; Iverson v. Dubose, 27 Ala. 418. That the act of congress left the form of the ‚assignment, as well as the regulations in relation to it, to the commissioner of the general land-office, only proves that he was to have and exercise a discretion as to these matters, and that he might dispense with a strict compliance with the forms and regulations prescribed by himself; for it is well settled, that a dispensing power may be exercised, in such matters, by the officer who prescribed the forms and regulations.—Caldwell v. Mayor of Albany, 10 Paige, 572; Harrell v. The State, 26 Ala. 52.

Conceding that a person entitled to a pre-emption, or any other owner of an equity to the land, founded on some other act or thing beyond the mere payment of the minimum price, might properly raise the question as to the regularity of the assignment; yet it is firmly settled, that such a question cannot be raised against the patentee, in a court of law, by one who has simply paid the minimum price to the district land-office, and obtained a receipt or certificate therefor, upon a mere private entry. The nature of such a private entry is different from that of a pre-emption right, or a right founded on the location of a land-warrant issued in consideration of military services. A private entry at the graduation price, evidenced only by a certificate thereof, is nothing more than an examinable authority to demand a patent; an avoidable sale, made upon condition that, if it is not found, upon

scrutiny, by the proper officer or department of the government, to be in all respects warranted by law, and free from conflict with a better or more meritorious claim, it may be vacated, and the money returned.  But the effect of the law authorizing the location of military land-warrants, is to protect the locator from the time of his original location, if he follows it up and ultimately obtains a patent: his patent, when obtained, relates back to the day of his original location, and overrides any such claim as results from a private entry at the graduation price, made after the original location, and not consummated by patent.—Pettigrew v. Shirley, 9 Missouri, 675; Allison v. Hunter, *ib.* 741; Lewis v. Lewis, *ib.* 183; Dickinson v. Brown, 9 Sm. & Mar. 130; Wells v. Thompson, 13 Ala. 793.

The claim of the locator of such warrant, after it has been consummated by patent, cannot be assailed, by one who has merely obtained a certificate of private entry under the graduation act, upon the ground that the original location was at first canceled or set aside by the government officer.  Suppose a judgment creditor files a bill to reach effects of his debtor fraudulently conveyed, thereby acquiring a lien and preference over all other creditors, (Dargan v. Waring, 11 Ala. 988;) that the chancellor erroneously dismisses his bill, and, after another creditor has filed a similar bill to reach the same effects, the complainant in the first bill succeeds in having the decision against him reversed and effaced: on thus succeeding, his claim to the effects relates back to the filing of his bill, and overrides the claim of the complainant in the second bill.—Paulling v. Watson, 26 Ala. 205.  On an analogous principle, the issuing of a patent to the locator effaces any previous adverse decision of any government officer, and gives him the benefit of a title dating back to his original location, especially against one who has nothing but a certificate of private entry under the graduation act.—Ladiga v. Roland, 2 How. (U. S.) 587.

Pugh & Bullock, *contra.*—Bates acquired no right to the land by the first location of his warrant, nor did the

title thereby pass out of the government. Being in the government at the time of Herron's entry, the title vested in him, and the subsequent re-location of the warrant could not divest or affect it. The patent to Bates was issued on the re-location, and derives all its validity from the re-location. Bates acquiesced in the cancellation of his first location, and accepted the last certificate, with the patent founded on it. The commissioner of the general land-office had a right to disregard the first location, because it was irregular and imperfect; and he exercised that right by annulling and canceling the location. But he had no right to withhold the land from market, after canceling the location, until Bates could perfect his assignment, and put himself in a position to re-locate his warrant. When the first location was canceled, the land became, *eo instanti*, subject to entry; and while thus subject to entry, Herron's rights vested under the general law.

The act of congress of March 22, 1852, making land-warrants assignable, is conclusive against the appellant. The forms and regulations to be prescribed by the commissioner, when prescribed, became a part of the law itself. Bates did not follow these forms and regulations; and the assignment to him was consequently void, and passed no right which he could exercise so as to withdraw any tract of public land from entry under the general law. Not being the assignee of the warrant, he had no right to locate it, nor could he deprive another of the right to enter under the general law. Whether he was in fact assignee, and whether he was in a position to locate his warrant, are questions to be decided by the act of congress, in connection with the regulations prescribed by the commissioner; and the commissioner himself had no dispensing power.

The case of Bouldin v. Massie's Heirs, 7 Wheaton, 122, recognizes the principle, that where the act itself directs how the assignment must be made and proved, no right vests unless the assignment is in accordance with the law.

As to the power of the commissioner to conclude the defendant by his decision, see 11 Missouri, 585.

STONE, J.—In this case, the plaintiff claims title under a patent issued to him by the general government, bearing date December 29th, 1855. The defendant's title consists of a receipt by the receiver of the local land-office, bearing date October 10th, 1854, acknowledging full payment for the same lands from the said Edward M. Herron. It is thus manifest that, under the rule recognized in this court, the evidence of title offered by each party, unaffected and uncontrolled by the evidence of his adversary, is sufficient to either sustain or defeat an action of ejectment.—Code, § 2292; Falkner v. Leith, 15 Ala. 9–13; S. C., 12 Ala. 170; Roper v. Bradford, 9 Porter, 354; Goodlet v. Smithson, 5 Por. 245; Birdwell v. Bowlinger, ib. 86; Bullock v. Wilson, 2 Por. 436; Masters v. Eastis, 3 Por. 368; Johnson v. McGehee, 1 Ala. 186; Long v. McDougald, 23 Ala. 413.

[2.] A patent issued by the government of the United States, which purports to grant lands in which the government had no title, or where the lands granted were not subject to sale, is void as an evidence of title, and may be so declared in an action at law against any one who has a lawful possession, or is in by color of title.—Stephens v. Westwood, 20 Ala. 275; S. C., 25 Ala. 717; Saltmarsh v. Crommelin, 24 Ala. 347; Crommelin v. Winter, 9 Ala. 594; Haden v. Ware, 15 Ala. 149; Stoddard v. Chambers, 2 How. (U. S.) 317; Ladiga v. Rowland, ib. 581; Hit-tuk-ho-nie v. Watts, 7 Sm. & M. 363–6; Gonzalees v. Hoover, 6 Serg. & R. 118; Gingrich v. Foltz, 19 Penn. 38–41; Wright v. Rutgers, 14 Missouri, 585; Nelson v. Moon, 3 McLean, 319; Iverson v. Dubose, 27 Ala. 418; Lyttle v. State of Arkansas, 9 How. (U. S.) 314; Cunningham v. Ashley, 14 How. 377; McAfee v. Keirn, 7 Sm. & M. 780; Marsh v. Gonsonlon, 16 La. 84.

It is equally true, that a patent, on its face, imports a complete appropriation and disposition of the lands it assumes to convey; and, subject to the rule above stated, no defect in the preliminary steps can be raised in an action at law to recover the possession of the lands.—Masters v. Eastis, 3 Por. 368; Suget v. Little, 24 Miss. 118; Perry v. O'Hanlon, 11 Missouri, 585; Boardman v. Reed,

6 Peters, 328 ; Bagnell v. Broderick, 13 Peters, 436 ; Patterson v. Winn, 11 Wheat. 380 ; Morgan v. Curtenius, 4 McL. 366.

[3.] This record brings before us the question of the power of the commissioner of the general land-office over the subject of land-entries, and also the exercise of that power in the case under discussion. In support of the ruling of the circuit court, it is contended, that the location, on 22d December, 1853, by Mr. Bates, of bounty land-warrant No. 67,990, on the lands in controversy, was canceled absolutely by the commissioner of the general land-office, by his order of May 10th, 1854 ; that the lands then became subject to private entry by the first applicant, and that the said order did not withhold said lands from market. Further, that if the order of the commissioner, fairly construed, was intended to have the effect of keeping said land out of market for the benefit of Mr. Bates, for a reasonable time after he should have notice that his entry was canceled, then it is contended, that the commissioner had no power to make such order, and that the same is void.

That the location of the land-warrant, so long as that location remained uncanceled, had the effect of taking from the general government all power to make sale of the land in dispute, we apprehend no one will controvert. During that period, this land was in condition to fall directly within the principle stated in the second paragraph of this opinion. If it were necessary to the result of this case, perhaps it admits of grave doubt whether the location of December, 1853, ever was canceled absolutely ; whether the land was, or could be under the order which the commissioner issued, placed again in the market, until a reasonable time should elapse after Mr. Bates should be notified of the action of the land department, within which he might perfect the assignments on the warrant, or in some other way complete his entry. We prefer, however, to base our opinion on another principle.

By the 1st section of the act of congress of July 4th, 1836, (5 U. S. Stat. at large, 107,) it is enacted, " that from and after the passage of this act, the executive duties now

prescribed, or which may hereafter be prescribed by law, appertaining to the surveying and sale of the public lands of the United States, or in anywise respecting such public lands; and also such as relate to private claims of land, and the issuing of patents for all grants of land under the authority of the government of the United States, shall be subject to the supervision and control of the commissioner of the general land-office, under the direction of the president of the United States."

It will be observed, that this section speaks of *executive duties;* and it may be doubted, whether the right to pronounce on the legality of a land-entry can with propriety be classed as an executive duty. In the case of Barnard v. Ashley, 18 How. (U. S.) 43, the supreme court of the United States construed the above copied section of the statute of July 4th, 1836. In that case, the question was, whether the commissioner of the general land-office had any appellate or revisory power over the decisions of the local land-officers. After alluding to the cases of Wilcox v. Jackson, 13 Peters, 511, and Lyttle v. State of Arkansas, 9 How. (U. S.) 333, which arose before the act of July 4th, 1836, the court said: "The commissioner does, in fact, exercise a supervision over the acts of the register and receiver. This power of revision is exercised by virtue of the act of July 4th, 1836, (§ 1,) which provides," &c. [copied above.] " The necessity," continues the court, "of ' supervision and control' vested in the commissioner, acting under the direction of the president, is too manifest to require comment, further than to say, that the facts found in this record show that nothing is more easily done than apparently to establish, by *ex-parte* affidavits, cultivation and possession of particular quarter-sections of land, when the fact is untrue, [otherwise.] That the act of 1836 modifies the powers of registers and receivers, to the extent of the commissioner's action in the instances before us, we hold to be true. But, if the construction of the act of 1836, to this effect, were doubtful, the practice under it for nearly twenty years could not be disturbed without manifest impropriety."

We regard the above as an authoritative exposition of the act of July 4th, 1836.

In Cruise v. Riddle, 21 Ala. 791, the plaintiff made title under a certificate of location by the register of the local land-office. The defense relied on was, that the defendant was in possession under a valid occupant or pre-emption claim, and that the plaintiff's entry was void, the land not being subject to location under a bounty land-warrant. This court, after conceding impliedly that the entry was irregular, ruled, that the defendant was in by no title which authorized him to question, in an action of ejectment, the regularity of plaintiff's location. The court added, that the settler's remedy in such a case was, " by application to the government to recall the certificate, or refuse the patent, if it shall appear that it was wrongfully obtained. But that must rest with the government and the department having charge of the public lands, to whom the application must be made."

We need not now determine whether a settler or preemptor has no other remedy than that pointed out above. See Wynn v. Garland, 16 Ark. 440. The case of Cruise v. Riddle certainly decides, that in an action of ejectment, the mere settler can make no defense at law ; and it intimates, in no measured or guarded terms, that in such case the *proper department* of the government has power to recall the certificate.

The case of Dickinson v. Brown, 9 Sm. & M. 130, was, in its legal principles, very like the present case. The suit was ejectment, and the plaintiff's title consisted in a patent from the general government. The defendant relied on an older certificate of entry, issued by the receiver of the local land-office. It was in evidence that this older certificate had been by the local register and receiver, and under the direction of the commissioner of the general land-office, canceled on the books of the land-office. Chief-justice Sharkey, in delivering the opinion of the court, after asserting that a patent was a suprior legal title to an older certificate of entry, added—" But admitting that it [the certificate] constituted a legal title, it was in proof that the certificate of entry had been can-

celed; and we cannot say that the register and receiver, with the approbation of the commissioner of the general land-office, had no power to cancel it; on the contrary, it is believed that such power is uniformly exercised. To a certain extent, these officers have a discretion in such matters."

To the same effect, and expressed in stronger language, are the following cases; Guidry v. Woods, 19 La. 334; Lott v. Prudhomine, 3 Rob. La. 293–5; Wynn v. Garland, 16 Ark. 440; Allison v. Hunter, 9 Missouri, 741; Lewis v. Lewis, *ib.* 182; Mitchell v. Cobb, 13 Ala. 137.

We hold, that the commissioner of the general land-office had authority to order the cancellation of Mr. Herron's certificate of entry; and that the effect of his order to the register and receiver at Elba to perfect Mr. Bates' location, and the confirmation of that location by the patent subsequently issued to Mr. Bates, had the effect of canceling Mr. Herron's entry, and of destroying any effect it may otherwise have had, as a defense in this action.

The rulings of the circuit court are in conflict with these views.

Reversed, nonsuit set aside, and cause remanded.