# SALTMARSH *vs.* CROMMELIN.

[TRESPASS TO TRY TITLES TO LAND.]

1. *Creek Indian reservation; authority of commissioner of general land-office to order sale of abandoned lands.*—The act of congress approved July 4, 1836, (5 U. S. Statutes at large, 107,) which transferred to the commissioner of the general land-office "the executive duties" appertaining to the sale of the public lands, conferred upon that officer the authority, previously vested in the secretary of the treasury, to give special directions for the sale of an abandoned reservation under the treaty of Fort Jackson of August 9, 1814.

2. *Same; commissioner's instructions construed to authorize sale.*—A letter from the commissioner of the general land-office, to the register and receiver of the local office, stating that, in his opinion, since it satis-

factorily appeared that the Indian had voluntarily abandoned his reservation under the treaty, "the land is now subject to entry under the pre-emption law," is a "special direction" to the register and receiver to allow the land to be entered under the pre-emption law.

3. *Pre-emption entry.*—The right to enter land, under the pre-emption law of 1834, does not depend upon the fact that the land has been previously exposed to public sale; nor can the validity of an entry, authorized by special instructions from the commissioner of the general land-office, be invalidated by proof of subsequent instructions from the commissioner, unless it is shown that those instructions are inconsistent with the former special instructions.

4. *Same; limitation of entry.*—Since the third section of the pre-emption law of 1834 (4 U. S. Stat. at large, 678,) allows entries to which the general limitation of two years does not apply, the courts are bound to presume that any particular entry, the illegality of which is not affirmatively shown, was authorized by law.

APPEAL from the Circuit Court of Autauga, on change of venue from Coosa.

Tried before the Hon. A. A. COLEMAN.

THIS action was brought by Hiram F. Saltmarsh, William T. Minter, and Ashley Parker, against Charles Crommelin, (and afterwards revived against his administrator,) to recover the possession of, as well as to try titles to a tract of land, containing about forty acres, which constituted a part of the south-east quarter of fractional section twenty-four (24), in township eighteen (18), range eighteen (18), in the district of lands subject to sale at Cahaba; and was commenced on the 11th October, 1840. The case was before this court at its January term, 1846, when the judgment of the circuit was reversed, and the cause remanded; and again at its January term, 1854, when the judgment of the circuit court was affirmed.—See the report of the case in 9th Ala. 594, and 24th Ala. 347. The latter judgment of this court was reversed, on error, by the supreme court of the United States, at its December term, 1855, and the cause was remanded to the primary court for another trial. See the case reported in 18 Howard's U. S. Rep. 87.

The land in controversy was a part of the reservation set apart and appropriated, in pursuance of the act of congress approved March 3, 1817, and of the treaty with the Creek Indians which was made at Fort Jackson on the

9th August, 1814, to Tallasse Fixico, who was a friendly chief of the Creeks; was sold and conveyed by him, in 1828, while in possession, to one George Taylor; and was sold and conveyed by said Taylor, in July, 1834, for valuable consideration, to the defendant, who immediately took possession under his purchase, and was in possession at the commencement of the suit. The plaintiffs derived title to the premises under a pre-emption certificate to Isham Bilberry and Samuel Lee, which was issued from the land-office at Cahaba on the 4th June, 1839, and which was marked in the margin "Entered under instructions of December 29, 1838"; an assignment of said certificate by said Bilberry and Lee to them, on the 4th June, 1839, and a patent thereon issued to them by the United States on the 10th October, 1840.

On the trial, as appears from the bill of exceptions in the present record, the plaintiffs produced their patent from the United States, and proved the defendant's possession of the premises at the commencement of the suit, and the value of the lands and of the annual rents; and the defendant then proved his title, as above set out. In rebuttal of the defendant's evidence, and to show the authority under which their patent was issued, the plaintiffs then read in evidence a letter from the commissioner of the general land-office at Washington, dated the 11th October, 1834, and directed to the register and receiver of the land-office at Cahaba, in these words: "Your letter of the 4th ult., with its enclosures, has been received. As it satisfactorily appears from the papers that Tallasse Fixico voluntarily abandoned, in 1827 or 1828, the land reserved for him under the Creek treaty of 1814, and which, agreeably to the act of 1817, was to 'enure to such chief or warrior only so long as he shall continue to occupy and cultivate the same,' and has obtained another reservation under the Creek treaty of 1832,—I am of opinion, that the land formerly held by him under the treaty of 1814 is now subject to entry under the pre-emption laws." The register of the local land-office, who was examined as a witness on the part of the defendant, testified, "that he made diligent search among the papers and records of said office, and

could find no order or letter of instructions from the land-office, or from the secretary of the treasury, in relation to said land; and that it was the custom of the office to file all orders and instructions from the department; but, in reply to a question by plaintiffs, he further stated, that he found a memorandum or reference to a letter from the commissioner, in relation to the said land, but could not find the letter itself."

"In this state of proof, the court charged the jury, that the letter from the commissioner of the general land-office, dated October 11, 1834, was not a sufficient authority to the register and receiver of the land-office at Cahaba to issue to Isham Bilberry and Samuel Lee the certificate of purchase read in evidence; and if the said instructions contained in said letter was the only authority which emanated from the government, to the officers of the land-office at Cahaba, for offering said land for sale or entry, and the patent was issued in pursuance of an entry made under such instructions, then the patent would be void, and the jury should find for the defendant." The plaintiffs reserved an exception to this charge, and they now assign it as error.

BYRD & MORGAN, for appellants.
ELMORE & YANCEY, contra.

A. J. WALKER, C. J.—The court below instructed the jury, that the plaintiffs' patent was void, if it was issued in pursuance of an entry made only under authority of the letter of the commissioner of the general land-office, of 11th October, 1834. In support of this charge it is contended, first, that the entry could not have been lawfully made without the special direction of the secretary of the treasury; secondly, that if the commissioner of the land-office had authority to direct the entry, he has not done so in his letter of 11th October, 1834; thirdly, that the land was not subject to entry, until it had been offered at public sale; and, fourthly, that by an endorsement upon the margin of the certificate of entry it appears, that the entry was in fact made upon the authority of instructions given

4

on the 29th December, 1838, and that, therefore, the entry cannot be justified by the letter of 11th October, 1834. We propose to consider these points in the order in which they are presented.

[1.] The land in controversy is part of a tract reserved, under the first section of the treaty made at Fort Jackson, on 9th August, 1814, to Tallasse Fixico, which, upon his voluntary abandonment, by the terms of the treaty, " devolved to the United States."—7 U. S. Statutes at large, 121. By the 6th section of an act of congress, approved March 3d, 1817, it was enacted, that the register should not offer such a reservation for sale, unless specially directed by the secretary of the treasury.—3 U. S. Statutes at large, 382; 1 U. S. L. L. 289. By the act of congress of 4th July, 1836, the *executive* duties appertaining to the sale of the public lands, or in any wise respecting the public lands, were imposed upon the commissioner of the general land-office.—5 U. S. Statutes at large, 107; 1 Pub. L. L. 552. By this latter act, the authority to direct the sale of reservations under the treaty of Fort Jackson was transferred from the secretary of the treasury to the commissioner of the general land-office. We cannot agree that the authority of the commissioner of the general land-office is, by virtue of the phrase "executive duties," restricted to matters purely ministerial. That phrase has never been understood as having that effect; and the validity of the acts of the commissioner of the general land-office, in reference to questions of a judicial nature, has been repeatedly recognized.—*Bates v. Herron*, 35 Ala. 117; *Mims' Heirs v. Higgins*, in MSS. The intent that the commissioner should have authority to pass upon questions of a legal character is clearly shown by the 5th section of the act of 1836 above referred to; for that section creates the office of solicitor of the general land-office, for the purpose of aiding the commissioner in the decision of such questions.

[2.] The commissioner's letter of 11th October, 1834, asserts that, as the voluntary abandonment of the land by Tallasse Fixico satisfactorily appeared from certain papers, in his opinion the land was subject to entry under the

pre-emption law. We think this letter is a "special direction" to allow the entry of the land under the pre-emption law. The commissioner of the general land-office stands in the light of a superior and revising tribunal to the registers of the local offices. The announcement of the liability to entry of land reserved under the treaty of 1814, must necessarily have been the result of an opinion, founded upon evidence, that the reservee had voluntarily abandoned the land, and that the law and interest of the government permitted the entry of the land. These things being involved in, and implied by what is said in the letter, it must be understood as authorizing the sale of the land, in accordance with the terms of the pre-emption law.

[3.] The third point is founded upon a total misapprehension of the statute. The right to enter land under the pre-emption law does not depend upon the fact that the land has been exposed to public sale. This is shown by the whole scope of the pre-emption law, by the practice under it, and by the provision in the act of 1830, that the pre-emption right shall not delay the public sales appointed by the president's proclamation.—Public L. L. 473, 525, 574. If the letter of 11th October 1834 authorized the entry of the land under the pre-emption law, the entry subsequent to that date could not be invalid, because the register had received other instructions, unless it had been shown that those instructions were inconsistent with the opinion given in the letter of 11th of October, 1834. The fact that the commissioner of the general land-office had cumulated his instructions for the sale of the land certainly cannot vitiate the entry.

[4.] Besides the points which we have noticed, it is insisted that the right of pre-emption, under the act of 1834, only continued for two years after the passage of that act; and that the entry in this case, having been made in 1839, and purporting to have been made under the act of 1834, is void. To this it is a sufficient reply that, by the third section of that act, entries by a certain class of persons are allowed to which the limitation of two years does not apply. We must presume in favor of the legality of the entry, and are not authorized to pronounce it invalid

when it appears that it may have been consistent with the law.

Reversed and remanded.

NOTE BY REPORTER.—This case was decided at the June term, 1861.