## IVERSON & ROBINSON *vs.* DUBOSE.

[ACTION OF EJECTMENT UNDER CODE.]

1. *No adverse possession against United States.*—Adverse possession cannot be set up to defeat or avoid a patent from the United States government, since there can be no adverse possession against the government itself.

APPEAL from the Circuit Court of Barbour.

Tried before the Hon. NAT. COOK.

THIS action of ejectment (Code, §§ 2209, 2210) was brought by the appellants, Alfred Iverson and Alex. J. Robinson, to recover an undivided moiety of the east half of section twenty-three (23), in township twelve (12), range twenty-eight (28), east. The bill of exceptions is as follows :—

" On the trial of this cause, the parties agreed that the pleadings should be considered as filed, so as to allow any evidence to go to the jury which was legal and admissible in such actions. Thereupon the plaintiffs introduced in evidence a patent for the land sued for, dated August 6, 1852, which recited (among other things), in substance, that Marpokay, a Creek Indian, had become entitled to the east half of section 23, in township 12, range 28 east; that said Indian, with the approbation of the President, had sold the same to Eli S. Shorter and John S. Scott; that Samuel A. Grier, as attorney in fact of said Scott, had transferred the interest of said Scott to Allen M. Irby, who transferred to plaintiffs;—and the said patent then grants one undivided half of said tract to said Shorter, and the other undivided half to plaintiffs. Plaintiffs proved, also, that a few days prior to the commencement of this action, they demanded of defendant one undivided half of said half-section, and that defendant refused to give up possession of the same, or any part thereof, but denied plaintiffs' right to any part of said tract, and claimed the whole of it in his own right; that defendant was in possession of said half-section at the date of the demand and suit; that plaintiffs, and those under whom they claimed, had never resided in this State; and that defendant, between the summer of 1843 and the commencement of this action, had been absent from this State more than eighteen days at one time.

" The defendant then proved, that he purchased said half section of land, in 1838, from one John T. Wise, and went into possession of the same under said purchase; that there was on the said land, at that time, an old Indian field of about sixty acres, and the balance of the tract was in a wild state; that he had been in possession of said land, since 1838, up to the time of this suit, had cleared most of it, and had been cultivating the same as his own during all that time. Defendant offered in evidence, also, a bond, which (he proved) was executed to him by said John T. Wise on the 3d May, 1839, conditioned to make title to said tract of land on the payment of the purchase money; to which the plaintiffs objected, on the ground that said bond was irrelevant and showed no right in the defendant to defeat this action; which objection the court overruled, and allowed the said bond to

be read in evidence, and plaintiffs excepted. Defendant also proved payment of the purchase money to said Wise, and that said Shorter and Scott had both departed this life; and read in evidence duly certified copies of the approved conveyances of said land by said Indian to said Shorter and Scott in March, 1834; also, of the power of attorney from Scott to Grier, November, 1841; also, of the conveyance of said land by Grier to Allen M. Irby, April, 1842; also, of the convey-ance of said land by Irby to plaintiffs, January, 1850. The last conveyance recited, as its consideration, $1000, for the undivided moiety of seventy-one sections and half-sections of land, including the one in suit; and all said intermediate conveyances of the land sued for were recited in the said patent. The power of attorney from Scott to Grier gave authority to sell, transfer, and convey such lands as the said Scott might own, or have any right, title, or claim to, in Ala-bama, Georgia, or Florida, (among which was the land sued for,) and to collect all moneys due said Scott in those States, by those indebted to him, his agents, or attorneys.

"This being all the evidence, the plaintiffs asked the court to charge the jury, that so far as the defendant attempted to avoid the said patent, and to defeat a recovery by plaintiffs on account of his adverse possession of the land sued for, the evidence was insufficient to show such adverse possession by him as would avoid said patent and defeat plaintiffs' recovery in this action; which charge the court refused to give, and the plaintiffs excepted."

The refusal to give this charge is now assigned for error.

JAS. L. PUGH, and JAS. E. BELSER, for appellants:

The doctrine of adverse possession does not affect the issu-ance of a patent, which can be avoided where it issues in fraud, or contrary to the authority of law. The reason of the law, which inhibits the sale of land in the adverse possession of another claiming title, does not apply to sales made under the authority of law. The President had authority, and it was his duty, to issue the patent. The legal title to the land was in the United States, and possession cannot be adverse to it.—Haden v. Ware, 15 Ala. 149; Doe ex dem. Nickles v. Haskins, ib. 619.

JEFF. BUFORD, *contra*, made the following points :—

1. The assignments from Scott to Irby, and from Irby to the plaintiffs, were valid as between the parties, and also, perhaps, as between the assignees and a mere intruder without color of title ; but not as against an honest occupant under *bona fide* color of title, whose right it is to be removed only by due course of law—to have his title tested before the judiciary, at the suit of him claiming at the inception of his adverse possession, and not at the suit of some more powerful buyer of lawsuits, to whom the title was afterwards transferred.—Mitchel v. United States, 9 Pet. 713. Such an occupant may avail himself of the legal maxim, that the sale of a lawsuit confers no title. The purchaser cannot be permitted to evade the effect of this principle, by ensconcing himself behind the machinery of a patent subsequently acquired : to allow this, would be to yield to indirection what is denied to a more manly attack, and to facilitate one in taking advantage of his own wrong. The defendant does not rely on his adverse possession as against the United States, but on his adverse possession against the plaintiffs at the inception of their title ; and he insists that plaintiffs, as against him, never acquired any title, nor the right to have a patent issued to them, and that therefore it is void. The issuance of a patent is a mere ministerial act, to be performed according to law ; a void patent does not authorize a recovery, even at law, against a party in possession under color of title ; and a patent may be void against one, and not against another.—Stoddard v. Chambers, 2 How. (U. S.) R. 317; Ladiga v. Roland, *ib.* 582; Crommelin v. Minter, 9 Ala. 594; Nance v. Strickland, 19 *ib.* 233; King v. Stevens, 18 *ib.* 476; Cook v. Webb, *ib.* 811; Saltmarsh v. Crommelin, 24 *ib.* 352.

2. The ultimate fee, the right of eminent domain, can only reside in the State as lord paramount, and not in the United States, a mere private land-owner within its limits. The title which passed to the reservee, or his assignee, under the treaty and reservation, had all the incidents and qualities of a fee—right of possession of realty, and a right of action for it; a right vendible, inheritable, and liable to execution.—9 Port. 354; 23 Ala. 413, 636. The patent, then, did not pass the fee ; it is not title, but evidence only of title ; and if the inter-

mediate conveyances are essential to show the authority to issue a patent, and are themselves void as against the defendant, the patent itself, being issued without authority, is also void.—Cases *supra*.

CHILTON, C. J.—The Indian reservee had a legal right to occupy the land in controversy under the treaty of 24th March, 1832, and to maintain an action at law for its recovery, if improperly kept out of possession.—Ladiga v. Rowland, 2 How. (U. S.) Rep. 581. The treaty also conferred power upon the reservee to convey his reservation, for a fair consideration, to any other person, in such manner as the President of the United States should direct. The conveyance, however, was required to be certified by some person appointed by the President, and was not to be valid until the President approved the same. A patent was to be issued to the purchaser upon the completion of the payment. If the reservee made an appointment by deed of the person to take the title from the Government, and this was approved by the President, this vested an inchoate title in the purchaser, which would maintain an action at law, and which was subject to be sold under execution against such purchaser. See Rosser v. Bradford, 9 Port. R. 354. Nevertheless, the ultimate fee could only pass out of the government of the United States by some of the modes pointed out by law ; and in this case, by the issue of a patent to the purchaser, or his alienee. The title remaining in the Government, there could be no adverse possession which could avoid the patent, as there can be no adverse possession against the Government. When a patent issues to the Indian's appointee, it operates as a grant from the Government directly to such appointee ; and the intermediate conveyances, or transfers, are only essential as showing the authority of the Government to issue it to the particular person to whom it is awarded.

If a party is in possession adverse to him who applies for a patent, he may file his *caveat* in the proper department of the Government, and show that the applicant is not entitled, but that he himself is ; and this question the Government, by its accredited officers, will settle, or can, as is sometimes done, refer the conflicting claimants to the courts of the country to

settle their right, and issue the patent to the party who shall appear to be entitled. But we have seen no decision, and we apprehend none can be found, where a patent has been held void, when issued in accordance with the laws of congress, merely because some other person was in possession of the land granted claiming adversely to the grantee. We concede, that the grantee would be chargeable with notice of all the right and title which the party in possession may have to the land; and we may further concede, that if he relied upon a conveyance from the reservee, or an intermediate purchaser, made pending such adverse possession, his conveyance would be unavailing to maintain his action by reason of such adverse possession. But when he sets up a title or patent directly from the Government, as against which there can be no adverse possession, issued in accordance with the laws of congress, it cannot be thus avoided. The intermediate conveyances are then placed out of the way, as the useless scaffolding when the building is completed, and the party may rely upon the patent without producing them.

The decision of the circuit judge being opposed to the conclusion we have attained, the judgment must be reversed, and the cause remanded.