## JONES' HEIRS *vs.* WALKER.

[REAL ACTION IN NATURE OF EJECTMENT.]

1. *When certified copy of recorded deed is admissible evidence.*—Under section 1544, Revised Code, a subsequent purchaser of land may give in evidence a certified copy of the deed to his vendor, on the ground that he has not the custody of the original.

2. *Judgments of former county courts ; how certified since transfer to circuit court.*—A transcript of the proceedings and judgment of the county court of Mobile in 1840, is properly certified by the clerk of the circuit court of Mobile county.

3. *Transcript from general land-office ; when admissible evidence.*—A transcript from the general land-office of the United States of the deed, to the patentee, made by a purchaser from an Indian reserve under the Indian treaty of 1832, is secondary evidence, and admissible only when the absence of the original is properly accounted for.

4. *Ejectment ; when plaintiff may recover.*—In ejectment the plaintiff must recover on the strength of his own title. He is defeated if the defendant, not being estopped, shows a superior outstanding title.

5. *Indian reservation ; title of purchaser under approved contract.*—A pur-

chaser of land from an Indian reserve, with the approval of the President of the United States, acquired such an interest as was subject to sale under execution in 1852 ; and its purchase under such sale conferred a title to the land superior to a patent issued to a purchaser from him subsequent to the sale.

6. *Ejectment ; recovery of less than entire interest.*—The plaintiff in ejectment may declare for the entire interest, and recover an undivided moiety.

7. *Adverse possession; does not run against United States.*—While the title to land remains in the Federal government, there can be no adverse possession of it which will render void a conveyance made by the rightful owner.

APPEAL from the Circuit Court of Macon.

Tried before the Hon. F. S. FERGUSON, an attorney of the court, (Revised Code, § 758,) in consequence of the incompetency of the presiding judge, who was disqualified by interest.

THIS action was brought by Seaborn Jones in his lifetime, against Mrs. Mary E. Walker, to recover the possession of a half-section of land in said county; was commenced on the 20th November, 1862, was revived in the name of the plaintiff's heirs-at-law, at the March term, 1870, and was tried at that term, on issue joined on the plea of not guilty. In consequence of the rulings of the court on the trial, both in the admission and rejection of evidence, and in the charges given and refused, the plaintiffs were compelled to take a non-suit, which they here moved to set aside, assigning as error the several rulings of the court to which they reserved exceptions.

The land in controversy was the reservation of a Creek Indian, under the treaty made between the United States and the Creeks in 1832. The plaintiffs claimed under a patent from the United States to said Seaborn Jones, dated the 7th day of November, 1856. This patent recited, that one of the Creek Indians "became entitled, under the provisions of said treaty, out of the lands ceded to the United States by said treaty," to the lands in controversy; that he had sold and conveyed the same to J. W. Freeman and C. P. Zimmerman; that said transfers or contracts had been approved by the president of the

Jones' Heirs v. Walker.

United States, but the original approved contracts had been lost or mislaid, " as represented by proof now on file in the general land-office," and had been transferred by said Freeman and Zimmerman to said Seaborn Jones; and contained a proviso in these words : "*Provided*, however, that if the said contract, appearing, as above stated, to be lost or mislaid, is yet in existence, and the *bona-fide* property of an adverse owner, then this patent is void, and of no effect." The defendant deduced title under a sheriff's deed to one Joshua W. Willis, as the purchaser at an execution sale, on the first Monday in October, 1852, on a judgment in favor of the Branch Bank at Mobile against Fountain & Freeman, of which firm said J. W. Freeman was a partner ; and a quit-claim deed from said Willis to herself, which was not produced on the trial, but was admitted to have been accidentally destroyed by fire.

On the trial, as the bill of exceptions shows, the plaintiffs offered in evidence the patent to their ancestor, Seaborn Jones ; proved the defendant's possession of the land, under claim of title from said Willis, from 1852 to the day of the trial ; and there rested their case. The defendant then offered in evidence a certified copy of the sheriff's deed to Willis, and a certified copy of the judgment and executions thereon in the case of the Branch Bank at Mobile against said Freeman. The judgment in that case, as set out in said transcript, was rendered by the county court of Mobile, on the 3d Monday in February, 1840, in a summary proceeding by notice and motion, and recited that the said Branch Bank had produced and proved the certificate of its president that the debt was really and *bona fide* the property of the bank; and the certificate to the transcript, which was dated the 21st day of October, 1869, was made and signed by the clerk of the circuit court of said county. " The plaintiffs objected to the admission of said transcript as evidence, on the following grounds : 1st, because the court had no jurisdiction to render such judgment, there being no such certificate by the president of said Branch Bank as was necessary to give the court jurisdiction in such summary proceeding; 2d, because the

record is irrelevant, not being the proceeding in such a case as authorized a summary judgment; 3d, because the record was not certified by any officer authorized by law to certify the same; and, 4th, because the clerk of the circuit court certified said paper under the seal of the circuit court, instead of the county court, in which the judgment purported to have been rendered." The court overruled each of said objections, and allowed the evidence to be read; to which rulings the plaintiffs excepted.

"The *defendant* then offered in evidence what purported to be a copy of a deed of conveyance, signed by John W. Freeman and wife, dated the 10th day of April, 1856, with the certificates thereto attached, which are in the words and figures following." (The papers here copied in the record are the following: 1st, a quit-claim deed from C. P. Zimmerman to Seaborn Jones, for the lands in controversy, with others, dated the 14th May, 1855, which stated, by way of recital, that said Zimmerman had conveyed all his interest in said lands to said Seaborn Jones, in 1836, or 1837, and declared that, if he had conveyed any of the said lands to any other person before the date of said deed, then said deed was to be null and void as to those lands; and, 2d, a quit-claim deed for the lands in controversy, with others, from John W. Freeman and wife to Seaborn Jones, dated the 10th April, 1856. Appended to these documents is the certificate of Joseph S. Wilson, "acting commissioner of the general land-office at Washington," "that the annexed, on pages one, two, three, four, and five, are true and literal exemplifications of the originals on file in this office.") "The plaintiffs objected to the introduction of this evidence, on the following grounds: 1st, that it was not relevant, without other proof connecting it with the case; 2d, that this purports to be a copy of the originals on file, when it is not shown that the 'originals on file' were not copies, or a copy of a copy; 3d, that the original should be produced, or its absence accounted for; 4th, that the copy thus produced was not proved, and there was no sufficient proof of the execution of the original. The court overruled these several objections, and allowed said tran-

scripts to be read in evidence to the jury; to which the. plaintiffs excepted."

"This was all the evidence in the case, and the court thereupon charged the jury as follows:

"1. This is an action of ejectment brought for the recovery of land, and the plaintiff must recover upon the strength of his own title; and if that is insufficient to maintain the action, it is immaterial what title the defendant has. The law presumes the defendant's possession to be legal.

"2. The recitals in the patent are evidence of the authority of the government to issue the patent, just as the acknowledgment of the receipt of money in a deed shows the consideration thereof; and, when uncontradicted by proof, must be taken as true.

"3. If the jury believe, from the evidence, that Freeman purchased this land from the Indian reservee, and that the contract was approved by the President of the United States, then Freeman had such title in and to the land as was subject to levy and sale under execution.

"4. If the jury believe, from the evidence, that Freeman purchased the land from the Indian reservee, and that the contract was approved by the President of the United States, and the same was sold under the judgment and execution shown in evidence, and purchased by Joshua Willis, who conveyed to the defendant before this suit was commenced, and before the patent issued, and that the defendant holds said land under a deed from Willis, then the patent to Jones is void, and the plaintiffs are not entitled to recover in this suit."

"The plaintiffs excepted to each one of said charges, and asked the court to instruct the jury—

"1. That to enable the defendant to defend in virtue of the purchase of the interest of John W. Freeman, she must have shown that Freeman had such title in the land at the time of said sale, as was subject to be sold under execution; and that the recitals in the patent, under the proof offered in evidence, were not sufficient to establish such title or interest.

"2. That, if the recitals in the patent are evidence, then,.

as it is recited that the Indian reservee sold to Freeman and Zimmerman, and there is no evidence that Zimmerman sold to any one but to Jones, the ancestor of the plaintiffs, then the plaintiffs were entitled to recover one moiety of the land.

"3. That if they believed all the proof, they would find for the plaintiffs the land in controversy, with nominal damages.

"4. That if they believed all the evidence, the plaintiffs were entitled to recover one undivided moiety or half of said land in controversy."

The court refused each of said charges as asked, and the plaintiffs excepted to the refusal of each.

The rulings of the court on the evidence, the charges given, and the refusal of the several charges asked, are now assigned as error.

W. C. McIver, and Morgan, Bragg & Thorington, for appellants.—1. The court below erred in its rulings on the admissibility of evidence, for the reasons stated in the record in each instance, all of which are insisted on.

2. The first charge given is erroneous.—Tyler on Ejectment, 73–4, and cases cited; *Garrett v. Lyle*, 27 Ala. 286.

3. The error in the second charge is fully shown by *Jones & Parsons v. Inge & Mardis*, 5 Porter, 327.

4. As to the third charge given, if the title in said Freeman was merely inchoate, it could not be sold under execution against him. By the treaty of March 24, 1832, it is provided that a title (that is, a patent) shall be issued to the purchaser upon the completion of the payment, which must be of fair price for the land, and which the agent of the government is to certify, and the president of the United States is to approve; and without his approval no conveyance from the reservee is good. This involves the performance of duties executive in their nature, and which, under the act of congress of July 4, 1836, are to be judged of, adju-ted by, and subject to the control of the commissioner of the general land-office, and the direction of the president.—*Bates v. Herron*, 35 Ala. 124.

Jones' Heirs v. Walker.

5. The Indian reservee had only the power to appoint the person to whom the government should convey the title, and, in default of appointment, the government engaged to give him a title.—*Chinnubbee v. Nicks*, 4 Porter, 362.

6. As to adverse possession against the government, the case of *Iverson & Robinson v. Dubose*, (27 Ala. 418,) is con-clusive.

7. The patent on its face imports a complete appropria-tion and disposition of the land which it assumes to con-vey; and when the government had a title to the land, no defect in the preliminary steps can be raised in action at law to recover the land.—*Bates v. Herron*, 35 Ala. 117; *Masters v. Eustis*, 5 Porter, 368; *Suget v. Little*, 24 Miss. 115; *Perry v. Chanlon*, 11 Miss. 585; *Beardman v. Reeves*, 6 Peters, 328; *Bagnall v. Broderick*, 13 Peters, 436; *Pat-terson v. Winn*, 11 Wheaton, 380; *Morgan v. C——*, 4 Mc-Lean, 366.

8. The defendant showed·no title in Freeman subject to execution and sale, and di l not assert any claim whatever as to one undivided moiety of the land. The plaintiffs may recover that moiety, though they declare.1 for the whole. Tyler on Ejectment, 823, and cases citied; Adams on Eject-ment, 211, and cases cited; 2 Porter, 9; *Baker v. Chas-tung's Heirs*, 13 Ala. 42; *McArthur v. Porter*, 6 Peters, 205; 12 Wendell, 170; 8 Dana, 196; 13 Wendell, 578.

9. One who sets up no title in himself is presumed to be an intruder, and can not defend against a patent rightfully issued by the government.—*Crommelin v. Minter*, 9 Ala. 594; *Petty v. Graham*, 13 Ala. 568.

WATTS & TROY, and GRAHAM & ABERCROMBIE, *contra.*—
1. Seaborn Jones, the original plaintiff, never had such a title to the land, or any part thereof, as authorized him to maintain this suit. At the time of the transfer by Free-man to Jones, the defendant was in possession of the lands, claiming them as her own under the deed from Joshua Willis. Freeman's transfer was, consequently, void, as was also the subsequent transfer by Zimmerman to Jones.—
*Dexter & Allen v. Nelson*, 6 Ala. 68. This is altogether a

different question from the statute of limitations, which, it is admitted, does not run against the government.

2. That Freeman had such an interest in the land as was subject to sale under execution at law, see *Rosser v. Bradford*, 9 Port. 354; *Long v. McDougald*, 23 Ala. 416.

3. If Jones had any right to a patent, that right must be based on the transfers of Freeman and Zimmerman, both of which, under the cases above cited, are void; and hence the patent itself must also be void. By the terms of the treaty of 1832 with the Creek Indians, the title to reservations never vested in the United States, but was recognized as remaining in the Indian reservee; and the right of the reservee to sell was restricted only for his own benefit, and so far as to require the approval of the president of the United States. Whenever a sale was made by the reservee; and the contract was approved by the president, there was a full and complete legal title conveyed to the purchaser.—*Rosser v. Bradford, supra.* After this sale and approval, the government had not the semblance of a title to the land; and the possession of any third person, from that time, must necessarily have been adverse to all the world. The patent itself recognizes the title as being in the Indian: its language is, that he "became entitled" to the land.—*Stephens v. Westwood*, 20 Ala. 275; *S. C.*, 25 Ala. 719.

4. There is nothing in the objections raised to the rulings of the court on the evidence.

B. F. SAFFOLD, J.—The suit, in the nature of ejectment, was instituted by the appellants against the appellees. The source of title of both parties was a sale of the land made by an Indian reservee to Zimmerman and Freeman. The defendant was a purchaser from Willis, who bought Freeman's half interest at a sale under execution in 1852. The plaintiffs claimed under a title from the United States, made in November, 1856, in consideration of a purchase by their ancestor, Jones, from Zimmerman and Freeman, who conveyed to him by separate quit-claim deeds, the first in 1855, and the other in 1856. The de-

fendant was in possession at the time of these conveyances to Jones.

1. A certified copy of the sheriff's deed to Willis was received in evidence, against the objection of the appellants that the absence of the original had not been accounted for. Section 1544 of the Revised Code requires the reception of such a transcript, when it appears that the party offering it has not the custody or control of the original. It does appear from the evidence that this deed conveyed to Willis much more land than he conveyed to the defendant. Besides, she had no right to its custody.

2. The transcript of the proceedings in the county court of Mobile, showing the judgment against Freeman, for the satisfaction of which the land was sold, was objected to by the appellant, as evidence for the defense. This judgment was in favor of the Mobile Branch of the State Bank, and was obtained on motion. It was rendered on a promissory note, in 1840, at which time this bank was authorized by law to recover judgment on such debts, by motion, in either the circuit or county court of Mobile, on giving thirty days notice to the debtor, and producing to the court the certificate of its president that the debt was really and *bona fide* the property of the bank.—Clay's Digest, p. 99, § 7. This was done.

When the county courts were abolished, in 1850, their records were transferred to the circuit court, the clerk of which became by law their custodian. The transcript is certified by the clerk of the circuit court of Mobile county to be a correct copy. The jurisdiction of the court was sufficiently shown, and the transcript was properly certified.

3. The certificate of the acting commissioner of the general land-office at Washington, appended to the deed from Freeman and wife to Jones, was a sufficient authentication of any paper or document appertaining or belonging to that office.—Rev. Code, § 2694. But the transcript was only admissible as secondary evidence of that deed after notice to the plaintiffs to produce the original.—2 Phil. Ev. 519, 520; *Jones' and Parsons' Heirs v. Inge's and Mardis' Heirs*, 5 Port. 327. Such notice was not given.

4. The first proposition in the charge of the court is correct. The general rule is, that the plaintiff must recover on the strength of his own title. If his title is insufficient to maintain the action, or the defendant, not being estopped, shows a superior outstanding title, he is defeated.—*King v. Stevens*, 18 Ala. 475. The meaning of the second is, that a patent from the United States government, when uncontradicted by proof, is sufficient to sustain the action of ejectment. This is undoubtedly true. As to the third, the purchase of Freeman from the Indian reservee, with the approval of the President of the United States, gave him such an interest in the land as was subject to sale under execution. It gave him such a legal title as, if obtained, would defeat a patent issued to a subsequent purchaser from him. The patent offered in evidence by the plaintiffs so declares.—*Iverson & Robinson v. Dubose*, 27 Ala. 418; *Rosser v. Bradford*, 9 Port. 354.

6. The fourth proposition of the charge is incorrect. In *Baker v. Chastang*, (18 Ala. 417,) it is said to be well settled, that the plaintiff in ejectment may declare for the whole, or the entire interest, and recover a less interest. There is no evidence whatever that the defendant ever obtained more than Freeman's interest in the land, which was an undivided half. The facts stated in this portion of the charge, in view of the evidence, would not prevent the plaintiffs from recovering Zimmerman's interest.

7. The possession of the defendant at the time of Zimmerman's conveyance to Jones was not of such a character as to defeat that deed by adverse possession.—*Iverson & Robinson v. Dubose*, supra.

The charges asked by the plaintiffs, which were refused, have been sufficiently considered in the examination of the general charge.

The judgment is reversed, and the cause remanded.